**FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., a non-profit Florida corporation, Plaintiff,**

v.

**CAREY CANADA, INC., a foreign corporation organized in Canada, and Carey Canadian Mining, Ltd., a foreign corporation organized in Canada, Defendants.**

No. 88–0551–Civ.

United States District Court, S.D. Florida.

Oct. 16, 1990.

Richard P. Cole, Miami, Fla., for plaintiff.

Stephen F. Myers, Tampa, Fla., for defendants.

## ORDER DISQUALIFYING DEFENDANT'S COUNSEL

HOEVELER, District Judge.

THIS CAUSE IS before the court upon three motions of the parties, namely, plaintiff's motion to disqualify defendant's counsel, and defendant's motions for summary judgment on both the concurrent and former representation aspects of plaintiff's motion to disqualify. The court, in consolidating treatment of the three pending motions, has addressed them as cross motions for summary judgment on the issue of Shackleford's disqualification.[1]

The dispute at issue concerns a question of professional responsibility. Plaintiff, the Florida Insurance Guaranty Association ("FIGA"), claims that the law firm of Shackleford, Farrior, Stallings & Evans ("Shackleford") simultaneously represented both plaintiff and defendant for a period of time when they had interests directly adverse to one another without consultation and without consent from FIGA. As a result, FIGA contends, Shackleford should be disqualified from continuing its representation of the defendant in the pending action. The court agrees.

---

1. Because the plaintiff has not formally styled its motion to disqualify a summary judgment motion, the court's treatment of it as such is, technically, sua sponte. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celo-* *tex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The notice requirement has been met in this instance given defendant's opportunity to present evidence on the disqualification issue through its opposition to plaintiff's motion, its own two motions for summary judgment, and its argument at two separate hearings.

## FACTS

The Shackleford firm began representing Carey Canada, Inc. and Carey Canadian Mining, Ltd. ("Carey Canada"), an asbestos mining concern, in matters involving liability insurance for asbestos claims in the late 1970's. Shackleford has represented FIGA in Hillsborough County since FIGA's inception in 1971. Beginning in April of 1986, a conflict of interests arose between Carey Canada and FIGA when one of Carey Canada's insurers, Midland Insurance Company, became insolvent. Over the next several months, three other insurers of Carey Canada—Transit Casualty, Mission National, and Integrity—also became insolvent. As mandated by Florida Statutes, Ch. 631, FIGA stepped into the shoes of the insolvent insurers and became the object of Carey Canada's asbestos related claims. At the time of their insolvency, Midland and Transit were not only potential adverse parties to the defendant, but had already filed claims against Carey Canada in a state court declaratory judgment action to determine the scope of their obligations for asbestos related claims.[2]

When, almost one year later, Carey Canada planned to initiate the filing of claims against FIGA based on its policies with the now insolvent insurers, Shackleford attorney Raymond Elligett notified a FIGA claims adjuster of the potential conflict in a letter dated March 27, 1987. The letter referred only generally to a potential conflict. It did not reveal that the adverse interests at issue involved some 80,000 asbestos bodily injury claims and numerous asbestos-related property damage claims totaling some $95,000,000 in disputed insurance coverage.[3] The claims adjuster did not follow up on the conflict of interest issue raised in the Elligett letter, and Shackleford took her silence for FIGA's consent. No further attempt was made by the Shackleford firm to consult with FIGA over the conflict until a February 1988 meeting where FIGA raised the issue after Shackleford had begun to file claims.[4]

Five weeks after the February 1988 meeting, FIGA filed this action seeking declaratory relief to resolve its obligations with respect to Carey Canada. When Shackleford formally entered its appearance in this action on behalf of Carey Canada, FIGA filed a written objection on April 18, 1988, followed by it's motion to disqualify in June.

Shackleford claims it had "standing consent" from FIGA to represent clients with adverse interests on matters unrelated to Shackleford's work for FIGA. The lack of objection to the Elligett letter, Shackleford claims, merely affirmed that FIGA's standing consent would apply to the firm's representation of Jim Walter and its subsidiaries Celotex and Carey Canada. FIGA stridently contests that it ever provided Shackleford with any such standing consent.

## JURISDICTION

This court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332.[5]

---

**2.** *See American Home Assurance Co. v. Jim Walter,* Circuit Court, Pinellas County, Florida, Case No. 84–15920.

**3.** The pertinent final paragraph in the letter to claims adjuster Judy Giddens is as follows:

> Finally, as FIGA is aware, our firm has and continues to represent FIGA in several matters, while at the same time we represent other clients with interests adverse to FIGA in unrelated matters. In an abundance of caution, I wanted to let FIGA know that I am becoming involved in the question of potential claims by our clients (Jim Walter Corporation and its subsidiaries [Celotex Corp. and Carey Canada] ) that are arising out of several excess level liability insurers going into receivership. This is a matter that has already

> been with the firm for some time and obviously does not relate to the work I am doing for FIGA in any way. Presently, [that work] is only [an] appeal, but it has always been automobile cases. However, consistent with our relationship with FIGA and its standing consent in such matters, I wanted to bring this particular situation to your attention. Should you have any questions, please feel free to contact me.

**4.** *See* 8/12/88 Deposition of Shackleford attorney Elligett ("Elligett Deposition") at 113–115, and 8/5/88 Deposition of Shackleford attorney Schropp ("Schropp Deposition") at 80–81.

**5.** The court is aware that three other state court actions involving substantially the same parties

## DISCUSSION

Summary judgment is appropriate only where there is no genuine issue as to any material fact, and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party who moves for summary judgment must demonstrate that there are no genuine disputes as to any material facts with respect to issues for which that party bears the burden of proof at trial. As to issues for which the non-moving party bears the burden, the movant need only establish that, after adequate time for discovery, there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. In determining whether the movant has met these burdens, the court must view the evidence and all permissible factual inferences in a light most favorable to the non-moving party. *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-movant, for its part, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. Rather than merely alleging the existence of *some* factual dispute, the non-moving party must rebut any facts properly presented by way of affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ This court has the power and responsibility to regulate the conduct of attorneys who practice before it. *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir.1979). The court's power is essential to ensure both the quality of justice in the immediate matter at hand and to maintain the public's trust in the legal profession and the judicial process. *Id.* at 904; *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 89 (5th Cir.1976).

### I. *Violation of the Concurrent Representation Rule*

FIGA contends that Shackleford has violated Rule 4–1.7 of the Rules Regulating the Florida Bar ("the Florida Rules"). Rule 4–1.7 governs the concurrent representation of clients with adverse interests.[6] In pertinent part, it states:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to the interest of another client, unless:

(1) The lawyer reasonably believes that the representation will not adversely affect the lawyer's responsibilities and relationship with the other client; and

(2) Each client consents after consultation.

The concurrent representation rule is founded on the principle that a client is owed his counsel's "undivided loyalty" as his "advocate and champion". *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2nd

and issues have been filed and that in each of those actions motions to disqualify Shackleford have also been filed. At the parties' first hearing before this court on November 10, 1988, Shackleford raised a claim of collateral estoppel. At that time Circuit courts in Hillsborough and Broward County had issued orders denying plaintiff's motions to disqualify. The court chose not to issue a ruling on the collateral estoppel question at that time. Subsequently, the Hillsborough County case was dismissed by order of a Florida appellate court and the Broward County order was vacated and remanded for further proceedings, also after appeal. Carey Canada's Motion for Summary Judgment on the Former Representation Aspects of FIGA's Motion to Disqualify and Supporting Memorandum at 1–2, n. 1. Neither party has subsequently raised a collateral estoppel claim, either in support of or opposition to Carey Canada's sum-

mary judgment motions or at the August 24, 1990 hearing before this court. Without commenting on the propriety of collateral estoppel in this instance, the court therefore treats all claims to collateral estoppel as having been waived by the parties. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607 n. 19, 95 S.Ct. 1200, 1209 n. 19, 43 L.Ed.2d 482 (1975) (claim preclusion and issue preclusion are lost if the parties fail to plead them); 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4405 (1981).

6. This court has adopted both the Florida Rules of Professional Conduct (Disciplinary Enforcement Rule 4B) and the American Bar Association Rules of Professional Conduct (Local Rule 16C). As to the provisions discussed herein, the two sets of rules are essentially identical.

Cir.1976). *See also Harte Biltmore Ltd. v. First Pennsylvania Bank, N.A.,* 655 F.Supp. 419, 421 (S.D.Fla.1987). As the language of the comment to the rule makes clear, "loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent.... even if [the adverse representations are] · wholly unrelated".

■ Shackleford does not dispute that its representation of Carey Canada was directly adverse to the interests of FIGA. Rather, it contends that Mr. Elligett's March 1987 missive to claims adjuster Giddens and the lack of objection thereto, taken together with FIGA's "standing consent" amounted to consultation and consent.

The court finds, as a matter of law, that the Elligett letter does not, by itself, rise to the level of consultation with FIGA concerning Shackleford's adverse representation of Carey Canada. Consent can only come after consultation—which the rule contemplates as full disclosure. In one of the leading cases on concurrent representation, the Ninth Circuit agreed that:

> To satisfy the requirement of full disclosure by a lawyer before undertaking to represent two conflicting interests, it is not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both of them, but he must explain to them the nature of the conflict of interest in such detail so that they can understand the reasons why it may be desirable for each to [withhold consent].

*Unified Sewerage Agency, Etc. v. Jelco Inc.,* 646 F.2d 1339, 1345–46 (1981), quoting *In re Boivin,* 271 Or. 419, 533 P.2d 171, 174 (1975). The Elligett letter was sent to a claims adjuster, not management or counsel for FIGA. It was not presented as a serious issue of singular concern, but set forth in the last paragraph of a letter concerning an unrelated FIGA case. Most gravely, the Shackleford "consultation" did not disclose the magnitude of the adverse interests at issue, namely, the 80,000 bodily injury claims and the numerous property damage claims totalling some $95,000,000 in disputed· insurance liability. Ms. Gidden's lack of objection to the Elligett paragraph cannot be construed as "consent", primarily because the letter itself did not constitute adequate consultation.

■ Shackleford concedes that between April 1986 and February 1988 the Elligett letter was the only consultation with FIGA directly concerning its adverse representation of Carey Canada.[7] Shackleford, instead, relies heavily on its contention that it had standing consent from FIGA to represent parties with adverse interests in matters unrelated to Shackleford's representations of FIGA. Its contention falls for two reasons.

First, based on the record before the court, Shackleford has not produced sufficient evidence to sustain its claim of standing consent. While traditionally summary judgment has been considered an improper arena for effecting any sort of evidentiary determination, the Supreme Court made it clear with its ruling in *Celotex Corp.,* 477 U.S. 317, 106 S.Ct. 2548, that Fed.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. The issue of consent by FIGA is in essence an affirmative defense which Shackleford would have the burden of proving at trial. After extensive discovery on the issue of FIGA's standing consent,[8] Shackleford not only has failed to come forward with any written instrument evidencing such consent, it has been unable to identify any single FIGA employee much less a specific conversation

---

**7.** *See* Elligett Deposition at 112–115; Schropp Deposition at 78, 80–81.

**8.** Two separate evidentiary hearings from related state court actions on the issue of Shackleford's disqualification are part of the record as are extensive depositions of FIGA employees and of counsel for both parties, all of which has been generated in a discovery period now exceeding two years.

that ever provided Shackleford with standing consent to sue FIGA.[9] Under the direction of *Celotex Corp.*, summary judgment against the defendant is mandated here, where Shackleford has failed to establish its affirmative defense of consent.

Secondly, even when considering the facts as alleged by Shackleford to be true, this court finds as a matter of law that the firm's standing consent arrangement is insufficient to meet its affirmative duty of consultation and consent under the concurrent representation rule. While this court does not go so far as to say a client could never furnish its counsel with standing consent to represent adverse parties, it does find that such standing consent must by necessity be exceedingly explicit. Shackleford's standing consent defense derives not from any written agreement between the firm and FIGA or from any stated permission of FIGA management or counsel, but instead from the failure of low-level claims adjusters to object to adverse representations.[10] This manner of consent is too rarified, too contingent, and too solicitous of FIGA's non-lawyer employees to rise to the level of a proper standing consent. Inherent in this proposed system of consent, is the lack of informed consultation by Shackleford. *See, Unified Sewerage Agency*, 646 F.2d at 1345–46. The duties of identifying the conflict of interest and obtaining the client's consent to adverse representation belong solely to counsel and cannot be relegated to the client and its employees by providing less than full disclosure in the manner Shackleford suggests.

## II. *Inapplicability of the Former Representation Rule*

■ Shackleford has argued that the applicable ethical guideline in this instance is Rule 4–1.9 of the Florida Rules which governs the representation of parties whose interests are adverse to former rather than current clients. Rule 4–1.9 mandates a lesser disqualification standard than does the concurrent representation rule as it does not prohibit the representation of *any* party with an interest adverse to a non-consenting client. Rather, the rule precludes representation of only those parties with interests adverse to former clients in substantially related matters or where the former client's confidences would be compromised.[11] *See Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1032 (5th Cir.1981).

Shackleford asserts that the former representation rule applies because the firm withdrew from representing FIGA in all matters when it learned that FIGA objected to its representation of Carey Canada. FIGA now being a former client, Shackleford reasons, the former representation rule must be the proper ethical standard by which to judge the firm's conduct. The option of dismissing FIGA, obviously, would not be available to Shackleford if Carey Canada were a new client that had come along subsequent to the conflict aris-

---

9. As sole support for its having obtained FIGA's standing consent, Carey Canada cites to testimony by. Shackleford attorney Charles Schropp. Carey Canada Motion at 4. The pertinent part of Mr. Schropp's testimony follows:

Question (by Mr. Joy): Who was it at FIGA who gave that standing consent which is referenced, in your opinion, in the [Elligett] letter of March 27th [1987]?
Answer (by Mr. Schropp): I do not know. It wasn't to me.
Q: Who was it given to?
A: I don't know.
Q: How did you find out it had been given?
A: It was well known around the firm, you know, that that had occurred.
Q: Well, how did you first become aware that it existed? Did someone tell you?
A: I'm sure that they did, but I don't know who told me.

Schropp Deposition at 137–8.

10. *See* Carey Canada Motion at 4, citing Schropp Deposition at 43, 77–8, 135–40; *see also* Elligett Deposition at 17–18.

11. Rule 4–1.9, in pertinent part, states:

A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) Use information relating to the representation to the disadvantage of the former client except as Rule 4–1.6 would permit with respect to a client or when the information has become generally known.

ing. *See e.g., Harte Biltmore,* 655 F.Supp. at 421. However, some support for Shackleford's argument does exist where, as here, a conflict arises while a firm is separately representing two clients. Shackleford points to the comment to Rule 4–1.7 which states: "Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 4–1.9". Shackleford also cites as support *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491 (11th Cir. 1989). In *Tipton,* the Eleventh Circuit denied plaintiff's motion to disqualify despite a period of simultaneous representation where defendant's counsel withdrew from representing plaintiff when it learned of the conflict. Without specifically addressing the issue, the court there did utilize the former representation standard in refusing to disqualify. *Id.* at 1499.

 Yet both *Tipton* and the comment to Rule 4–1.7 concern an *immediate* withdrawal by counsel upon discovery of the conflict of interest and failure to obtain consent. *See Tipton,* 872 F.2d at 1498. When counsel, upon discovery and absent consent, immediately withdraws from a concurrent adverse representation, the proper disqualification standard is expressed in the former representation rule. Otherwise, to require disqualification for the mere happenstance of an unseen concurrent adverse representation—where the representations are not substantially related and client confidences are not endangered—would unfairly prevent a client from retaining counsel of choice and would penalize an attorney who had done no wrong. Shackleford's withdrawing representation long after discovery of the conflict and failure to obtain consent is not the proper mode of withdrawal which *Tipton* and the comment envision. If it were, counsel could always avoid the more stringent concurrent representation rule by converting a present client into a former one. The cases addressing the issue are in agreement: in the absence of an immediate

withdrawal upon discovery, clients who were concurrently represented at any point during the conflict are treated as concurrent clients for purposes of the disqualification motion. *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 435 F.Supp. 84, 95 (S.D.N.Y.1977), *aff'd in part, rev'd in part on other grounds,* 567 F.2d 225 (2nd Cir. 1977); *Unified Sewerage Agency,* 646 F.2d at 1345 n. 4 (the challenged attorney cannot be allowed to "convert a present client into a 'former client' by choosing when to cease to represent the disfavored client"); *see also, E.E.O.C. v. Orson H. Gygi Co., Inc.,* 749 F.2d 620, 621 (10th Cir.1984), *Picker Intern., Inc. v. Varian Associates, Inc.,* 670 F.Supp. 1363, 1366 (N.D.Ohio 1987) *aff'd* 869 F.2d 578 (Fed.Cir.1989); *Harte Biltmore,* 655 F.Supp. at 421; *Ransburg Corp. v. Champion Spark Plug Co.,* 648 F.Supp. 1040, 1044 (N.D.Ill.1986).

 The concurrent representation rule, then, is the applicable ethical standard by which to judge Shackleford's conduct in this action. Shackleford, for purposes of the disqualification motion, continues to owe FIGA its absolute, undivided loyalty. *Fund of Funds,* 567 F.2d at 232–34. By not consulting with FIGA and obtaining its consent to the concurrent representation of Carey Canada, Shackleford has violated its duty of loyalty to FIGA and potentially undermined "public confidence in the legal profession and the judicial process". *In re Yarn Processing Patent Validity Litigation,* 530 F.2d at 89. As such, it is hereby

ORDERED and ADJUDGED that FIGA's Motion to Disqualify is GRANTED. Carey Canada's Motion for Summary Judgment on the Concurrent Representation Aspects of FIGA's Motion to Disqualify is DENIED. Carey Canada's Motion for Summary Judgment on the Former Representation Aspects of FIGA's Motion to Disqualify is DENIED without prejudice.[12]

DONE and ORDERED.

---

12. FIGA has also strenuously argued that its

confidences would be inevitably compromised

by any future Shackleford adverse representation due to the firm's knowledge of FIGA's internal practices and procedures. As the court finds the former representation standard inapplicable here, it takes no position with respect to future representations by Shackleford of clients with interests adverse to its now former client FIGA. The court does note, however, that to disqualify Shackleford in future representations, FIGA needs to establish that Shackleford was privy to specific confidences that are substantially related to the future litigation. *Duncan,* 646 F.2d 1031. As to this action, Shackleford is to cease its representation of Carey Canada and assist substitute counsel only to the extent necessary to ensure a smooth transition.