**GENERAL CIGAR HOLDINGS, INC., Plaintiff,**

v.

**ALTADIS, S.A.; Altadis U.S.A., Inc.; and Consolidated Cigar Holdings Inc., Defendants.**

No. 00–4187–CIV.

United States District Court, S.D. Florida, Miami Division.

April 11, 2001.

Robert T. Wright, Jr., Ignacio Sanchez, John D. Eaton, Verner, Liipfert, Bernhard, McPherson and Hand, Miami, E. Marcellus Williamson, Alexandra Shapiro, D. Benjamin Barros, Latham & Watkins, Washington DC, for Plaintiff.

Larry Kellogg, Peter F. Valori, Tew, Cardenas, Rebak, Kellogg, Lehman, Demaria & Tague, L.L.P., Miami, Daniel R. Murdock, Brian L. Sullivan, Steven J. Young, Winston & Strawn, New York City, for Defendants.

## ORDER DENYING MOTION TO DISQUALIFY COUNSEL

MORENO, District Judge.

Defendants move to disqualify Plaintiff's counsel due to an alleged conflict of interest based on counsel's joint representation of Defendant Altadis U.S.A., Inc. and other cigar companies in an unrelated matter currently pending before the Supreme Court of the United States and the law firm's representation against Altadis U.S.A. in this case. Consequently, Defendants also move to disqualify Plaintiff's co-counsel law firm. Because the law firm obtained in advance informed consent permitting the concurrent representation, the motion to disqualify counsel is DENIED.

### Background

A group of attorneys currently with the law firm of Latham & Watkins have served as outside counsel to Plaintiff General Cigar Holdings, Inc. for a number of years and in a host of matters both corporate and litigation. In June of 1999, the predecessors of Altadis, Consolidated Cigar Company and Havatampa Inc., along with General Cigar and four other manufacturers retained Latham as lead counsel in an action challenging tobacco advertising, retail display, and labeling regulations promulgated by the Massachusetts Attorney General (the "Massachusetts action"). At the request of General Cigar, the long-time client of the lawyers currently at Latham, an engagement letter containing a waiver was sent to the representatives of

each corporation on June 15, 1999 and to their outside counsel as well. Kearney Decl. ¶ 9. At the time of the engagement letter, the fees and charges incurred for Latham's representation was approximately $115,000.00. The engagement letter provides:

Our firm has in the past and will continue to represent clients listed on the attached Exhibit A (each an "Exhibit A Client") in matters not substantially related to this engagement. Accordingly, each Client agrees to waive any objection, based upon this engagement, to any current or future representation by the firm of any of the Exhibit A Clients, its respective parent, subsidiaries and affiliates in any matter not substantially related to this representation. Of course, we will not accept any representation that is adverse to you in this matter.

Kellogg Decl. Ex.D. Prior to finalizing the engagement letter, Mr. Kearney, the partner in charge of the Massachusetts action at Latham, provided an earlier draft to counsel for each company, including outside counsel for both Consolidated and Havatampa. Kearney Decl. ¶ 9.

It is undisputed that each of the companies agreed to this waiver. As is obvious from the text of the letter, Latham did not explicitly disclose that it intended to serve as Plaintiff's counsel in an action where suit would be brought against Altadis U.S.A. The engagement letter recognizes that Latham is representing the collective and uniform interests of the cigar manufacturers as a group in the Massachusetts action against a common opponent.

The Massachusetts action has been litigated in the District Court of Massachusetts and in the First Circuit. On January

8, 2001, the Supreme Court granted certiorari on the First Amendment issue related to advertising and retail restrictions. *See Altadis U.S.A. Inc. v. Reilly,* —— U.S. ——, 121 S.Ct. 755, 148 L.Ed.2d 659 (2001). The Massachusetts action is currently pending before the Supreme Court on these issues. Discovery has long since ended in the Massachusetts action and the parties do not anticipate that there will be a need for further factual findings on remand.

In the course of their representation of the cigar companies in the Massachusetts action. Latham had no contact with employees of Consolidated or Havatampa without direct oversight of outside counsel for the respective companies. Kearney Decl. ¶¶ 10–13. Latham had no access to privileged documents and discovery responses were prepared in collaboration with outside counsel for Consolidated and Havatampa. On October 13, 2000, after the merger of Consolidated and Havatampa created Altadis, another letter was sent to Altadis regarding the allocation of fees and to affirm that Altadis agreed to the terms of the original letter. Defendants' Reply p. 4.

The instant action was filed on November 2, 2000. In the complaint Plaintiff alleges violations by the Defendants of the Sherman Act, the Clayton Act, the Lanham Act, and violations of various state laws relating to antitrust and unfair competition. There is no First Amendment issue raised in the instant lawsuit. Where advertising is implicated it is related solely to trademark issues.

None of the Latham attorneys or paralegals who worked on the Massachusetts action has done any work on the Florida action except E. Marcellus Williamson, who spent less than two hours at one point

answering a hypothetical question for Mr. Kearney related to the Massachusetts action. No confidential or privileged information was disclosed to Mr. Williamson at that time, nor were any documents relating to that action provided to him. Kearney Decl. ¶ 16; Williamson Decl. ¶ 1. At oral argument, counsel for both sides. conceded that there is a ample evidence before the Court to rule on this motion.

### Analysis

The disqualification of counsel is an extraordinary measure that acts immediately to the detriment of the client by separating the client from chosen counsel. *Metrahealth Insurance Co. v. Anclote Psychiatric Hospital, Ltd.,* 961 F.Supp. 1580, 1582 (M.D.Fla.1997); *Fisons Corp. v. Atochem North America, Inc.,* No. 90 Civ. 1080(JMC), 1990 WL 180551, at *2 (S.D.N.Y. Nov.14, 1990). A court "must take care to preserve the delicate balance between a party's right to retain the counsel of his choice. and the need to ensure adherence to the highest ethical standards for professional responsibility." *Fisons,* 1990 WL 180551, at *2 (citing *Emle Indust., Inc. v. Patentex, Inc.,* 478 F.2d 562, 564 (2d Cir.1973)).

■ The burden of proof initially is on the moving party to establish grounds for disqualification. *Metrahealth,* 961 F.Supp. at 1582 (citing *Moyroud v. Itek Corp.,* 528 F.Supp. 707 (S.D.Fla.1981)). When the representation is concurrent, as in this situation, adverse representation is *prima facie* improper. *Cinema 5 Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1387 (2d Cir.1976). Latham does not dispute that its representation of Plaintiff in the instant suit is adverse to Altadis U.S.A., its client in the Massachusetts action.

■ The standard for disqualifying of lawyers because of concurrent representa-

tion is more strict than the standard for adverse representation of a former client. *Florida Insurance Guaranty Assn., Inc. v. Carey Canada, Inc.*, 749 F.Supp. 255, 260 (S.D.Fla.1990)("*FIGA*"). Where attorneys have undertaken representation that is adverse to a current client, the conduct of the attorneys undertaking the concurrent representation must be measured against the duty of undivided loyalty to each of the attorneys' clients. *Cinema 5*, 528 F.2d at 1386; *FIGA*, 749 F.Supp. at 258–9. The Latham attorneys must meet the heavy burden of demonstrating that there will be no actual or apparent conflict in loyalties or a diminution in the vigor of their representation. *Cinema 5*, 528 F.2d at 1387.

 The standards of professional conduct of the members practicing before this Court include the current Rules Regulating the Florida Bar. Southern District of Florida Local Rule 11.1.C; *FIGA*, 749 F.Supp. at 258. Concurrent representation is regulated by Rule 4–1.7 of the Rules Regulating the Florida Bar, which reflects the heavy burden on the attorneys seeking to engage in adverse concurrent representations.[1] Rule 4–1.7 states:

> (a) Representing Adverse Interests. A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:

> (1) the lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and

> (2) each client consents after consultation.

Thus, Rule 4–1.7 prohibits concurrent adverse representation unless the attorney obtains consent from each client and can demonstrate that their representation will not be impaired.

## A. Consent

 Examining first the issue of consent, to avoid disqualification when attorneys represent adverse interests, attorneys are required to fully disclose the adverse effects of the representation and obtain the consent of the parties. *Fisons*, 1990 WL 180551, at *4 (citing *Cinema 5*, 528 F.2d at 1386). The burden of proving full disclosure and consent is on the attorney seeking to represent adverse interests. *Fisons*, 1990 WL 180551, at *4.

 The Court is permitted to rely on a number of uncontroverted affidavits filed in support of either side. *See Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 723 (7th Cir.1982). In the affidavits it is undisputed that an earlier draft of the June 15, 1999 engagement letter was sent to counsel for each of the companies involved in the Massachusetts action. The

---

**1.** Upon examination of the *Cinema 5* opinion, it is clear that the Second Circuit carved out an exception to the *prima facie* disqualification for concurrent adverse representation. Under *Cinema 5*, Latham would be permitted to engage in the concurrent representation if it could show that there is no possibility that the allegations of this suit will lead to an actual or apparent conflict in the loyalties or diminution in the vigor of its representation. *Cinema 5*, 528 F.2d at 1387. The Eleventh Circuit has not explicitly adopted this exception to the test set forth in Rule 4–1.7. This Court finds that the circumstances of this case would fit within the *Cinema 5* exception as "there will be no actual or apparent conflict in loyalties or diminution in the vigor of [Latham's] representation." *Id.* However, counsel at Latham has conceded that if the consent is not valid, Latham should be disqualified.

final engagement letter was sent to the representatives of the corporations and their respective outside counsels and was accepted by all of the companies. The letter clearly raises the possibility of future representation by Latham of General Cigar in any matter not substantially related to Latham's representation in the Massachusetts action.

Defense counsel argues that the engagement letter does not explicitly mention that such future representation might include Latham bringing suit against one of the companies, and, therefore, the letter inadequately met the disclosure and consent requirements of Rule 4–1.7. Defense counsel further argues that the letter submitted to the newly formed Altadis U.S.A. should have been more specific as it was sent less than a month before the instant suit was filed.

The issue at the center of this controversy is whether the acceptance by the companies of this engagement letter represents sufficient informed consent for the companies. Defendants rely on *FIGA* in support of their argument that this waiver does not constitute adequate consent. In *FIGA,* the attorney seeking to represent adverse interests sent a letter to a claims adjuster informing the employee of a potential conflict. *FIGA,* 749 F.Supp. at 257. The conflict already existed at the time the letter was sent by counsel. Judge Hoeveler determined that the lawyer had failed to meet his burden of demonstrating informed consent because the letter was not explicit and the claimed consent arose from the failure of a low-level claims adjuster to object to adverse representation. Neither management nor counsel gave its permission for adverse representation. *Id.* at 260. The court held, "This manner of consent is too rarified, too contingent, and too solicitous of FIGA's nonlawyer employees to rise to the level of a proper standing consent." *Id.* The *FIGA* court, however, explicitly stated that it did not seek to foreclose the possibility that a client could furnish counsel with standing consent to represent adverse parties. *Id.* In the instant case it is advance consent from a represented party for a potential future conflict that is at issue.

In *Fisons,* standing consent for concurrent adverse representation was deemed adequate where the corporation, a "knowledgeable and sophisticated client," had consented to potential future adverse actions. *Fisons,* 1990 WL 180551, at *5. In *Fisons,* consent was obtained from an officer of the corporation who was also an attorney. *Id.* Another factor that informed the *Fisons* court was the determination that the corporation knew the long standing relationship of the lawyers with the adverse party. *Id.*

The engagement letter in the instant case was reviewed by outside counsel and the respective representatives of the corporations. As in *Fisons,* it is clear that advance consent was obtained from knowledgeable and sophisticated parties. There is no dispute that the predecessors of Altadis, U.S.A. were aware of the Latham attorneys' relationship with General Cigar. Allowing for advance, informed consent has significant advantages to both clients and lawyers alike, especially where large firms and sophisticated clients are involved. While the engagement letter could have been more explicit, under the circumstances, it represents informed consent for potential adverse actions.

### B. Substantial Relationship

Defendants argue that even if the Court was to determine that consent was appro-

priate. Latham should be disqualified as the Massachusetts action and the instant case are substantially related. They argue that both suits involve the same company, not an unrelated division, and involve the same aspect of the business, the marketing of cigars. Of course the substantial relationship test is a prong of Rule 4–1.9, which applies in situations where the adverse party is a former client. Under the terms of the engagement letter, however, Latham has bound itself not to undertake adverse representation that is substantially related to the Massachusetts action.

 For a matter to be substantially related, the matters "need only be akin to the present action in a way reasonable people would understand as important to the issues involved." *Estate of Jones v. Beverly Health and Rehabilitation Services, Inc.*, 68 F.Supp.2d 1304, 1310 (M.D.Fla.1999)(quoting *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir.1981)). Latham argues and the Court agrees that while both actions on an abstract level involve the marketing of cigars, that is where the similarities stop. The Massachusetts action involves restrictions on the advertising, retail display and labeling of tobacco products. The legal issues include federal preemption, Commerce Clause, and First Amendment issues. The allegations that Defendants have attempted to monopolize the premium cigar market, have engaged in the tying of one product to another, and have violated trademarks do not involve any of the issues related to the regulations involved in the Massachusetts action.

## C. Adequate Representation

 Latham argues that its representation of General Cigar in this matter will not diminish its ability to vigorously repre-

sent Altadis in the Massachusetts action. Latham points out that to avoid disqualification, Rule 4–1.7(a)(1) requires that counsel reasonably believe "the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client." As was the case when Latham first undertook the representation of the cigar companies in the Massachusetts action, the interests of all of the companies are identical. All of the legal arguments and factual issues are common to the companies in that action, and Latham has taken no independent services on behalf of Altadis. Accordingly, it is clear that Latham's adverse representation in this action will not affect the representation of Altadis in the Massachusetts action.

## D. Nature of the Present Action

 Defendants also argue that the nature of the suit is relevant as Plaintiff General Cigar has alleged violations that would constitute felonies under antitrust law. In *Fisons,* the court explained that an action that implicates the character of the party adversely represented may cause disqualification in an unrelated case. *Fisons,* 1990 WL 180551, at *7. The court aptly noted that allegations of fraud in the unrelated suit may hinder an attorney's ability to adequately represent the client in the other action.

In the instant suit, there is no allegation of fraud. Of course allegations of unfair trade, monopolistic practices, and trademark violations paint Altadis in a less than favorable light. The allegations of false and misleading statements are most closely related to the implications of character with which the *Fisons* court was concerned. However, these allegations relate solely to the dispute over the trademarks at issue and do not implicate Altadis's

character the way an allegation of fraud would. Thus the nature of the present action is not an independent basis for disqualification.

### E. Disqualification of Co–Counsel

Defendants argue that if Latham is disqualified, their co-counsel at Verner, Liipfert, Bernhard, McPherson and Hand should also be disqualified. Defendants concede that there is not independent cause to disqualify Verner. As the Court finds that Latham should not be disqualified, there is no basis for disqualification of co-counsel at Verner.

### Conclusion

The Court is understandably troubled when a client is sued by another party represented by its own counsel. However, it was the clients informed decision to bind itself to the terms of the engagement letter. As the agreement set forth in the engagement letter was entered into freely and voluntarily by sophisticated parties each represented by counsel, it is the determination of this Court that the consent obtained in connection with the Massachusetts action is valid. Latham has also demonstrated that its ability to represent all of its clients in the Massachusetts action will not be hindered by its representation in the instant action. Accordingly, the motion to disqualify both Latham and Verner is DENIED.