[No. A053471. First Dist., Div. Four. May 21, 1992.]

TRUCK INSURANCE EXCHANGE, Plaintiff and Appellant, v. FIREMAN'S FUND INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Paul Delano Wolf, Susan Raffanti, Jeffrey S. Kross, Crosby, Heafey, Roach & May, Raoul D. Kennedy, Ezra Hendon, Jacqueline M. Jauregui and Marshall C. Wallace for Plaintiff and Appellant.

Kaufman & Logan, Peter J. Logan and Richard E. Flamm for Defendant and Respondent.

OPINION

REARDON, J.—In an action for equitable subrogation, equitable contribution, declaratory relief and damages for breach of contract, defendant Fireman's Fund Insurance Company (FFIC) successfully moved to disqualify the law firm of Crosby, Heafey, Roach & May (Crosby) from acting as counsel for plaintiff Truck Insurance Exchange (Truck). ██ ██ Truck has appealed.[1]

---

[1]Citing federal cases, FFIC argues that an order granting a motion to disqualify a law firm is not appealable. (See *Richardson-Merrell Inc.* v. *Koller* (1985) 472 U.S. 424, 440-441 [86 L.Ed.2d 340, 352-353, 105 S.Ct. 2757].) Although California's rule has been criticized, it has been held that an order granting or denying a motion to disqualify an attorney is appealable, either as a denial of injunctive relief or as a final order upon a collateral matter unrelated to the merits of the underlying litigation. (*Meehan* v. *Hopps* (1955) 45 Cal.2d 213, 215-217 [288

## I. FACTS

### A. Introduction

The underlying lawsuit was commenced in February 1990. Kaiser Cement Corporation, Kaiser Gypsum Company, Inc. (collectively, Kaiser), and Truck seek contribution from FFIC and other insurers to defend and indemnify Kaiser against third party asbestos-related bodily injury lawsuits. Truck alleged that it alone had undertaken the defense of Kaiser and had expended more than $11.3 million in defense costs and almost $1.3 million in indemnity expenses for those claims.[2] A key issue in the coverage cases is the terms of insurance policies issued by FFIC between 1939 and 1964. At the time the lawsuit was initiated, Truck was represented by the law firm of Ropers, Majeski, Kohn, Bentley, Wagner & Kane (Ropers).

On January 11, 1991, the trial court granted FFIC's motion to disqualify Ropers. Truck then asked Crosby to represent it. The Crosby firm had represented Truck and its affiliated companies in numerous other matters.

When Truck contacted Crosby concerning the instant case, Crosby ran a computerized conflicts check and found that for several months it had been defending Fireman's Fund Credit Union—an entity related to FFIC—in two wrongful termination suits. Crosby concedes that defending Fireman's Fund Credit Union made FFIC Crosby's client.

In a letter dated January 18, 1991, Crosby informed FFIC of Truck's desire for representation by Crosby and inquired of FFIC if it objected to

---

P.2d 267] [motion den.]; *Vivitar Corp.* v. *Broidy* (1983) 143 Cal.App.3d 878, 881 [192 Cal.Rptr. 281] [motion granted].)

In this case, neither FFIC's motion nor the court's order was couched in injunctive language. (Compare *Meehan* v. *Hopps, supra,* 45 Cal.2d at pp. 214-215.) On the other hand, the alternative theory of appealability cited in *Meehan* has been criticized because the final order in a collateral matter such as this does not direct the payment of money or the performance of an act. (See *Efron* v. *Kalmanovitz* (1960) 185 Cal.App.2d 149, 154-156 [8 Cal.Rptr. 107]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 45, 47-48, pp. 69, 70-74; 1 Eisenberg et al., Cal. Procedure Guide: Civil Appeals & Writs (The Rutter Group 1991) ¶¶ 2-80, 2:133.1, pp. 2-27, 2-39; compare *I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327, 331 [220 Cal.Rptr. 103, 708 P.2d 682] [final order on collateral matter directing payment of money appealable]; *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942] [same].)

Under the doctrine of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937], however, we adhere to the Supreme Court's alternative holding in *Meehan* v. *Hopps, supra,* 45 Cal.2d at pages 215-217. The order is appealable as a final order upon a collateral matter unrelated to the merits of the underlying litigation.

[2] By the time the trial court heard the motion to disqualify Crosby, Truck's defense costs in Kaiser's asbestos-related bodily injury cases had risen to more than $17 million.

Crosby representing Truck in the insurance coverage case. (See Rules Prof. Conduct of State Bar, rule 3-310(B).)[3] As an alternative, Crosby informed FFIC that to eliminate any conflict, it was willing to withdraw from the two wrongful termination cases, to help transfer those cases smoothly to new counsel, and to waive any fee for its past services. FFIC objected to the concurrent representation, did not provide written consent, and stated its desire to have Crosby continue as its attorney in the wrongful termination cases. Crosby, nonetheless, accepted representation of Truck.

On February 19, 1991, Crosby moved to withdraw as counsel for Fireman's Fund Credit Union in the wrongful termination cases. On March 7, Crosby notified the court that substitute counsel had been retained in each of those cases, that the case files had been transferred, and that other steps were being taken to insure an orderly transition of the matters.

B. *The Motion to Disqualify*

Meanwhile, also on February 19, 1991, FFIC filed its motion to disqualify Crosby from representing Truck against FFIC in this case while it concurrently represented FFIC in the wrongful termination cases. In support of its motion, FFIC argued that a law firm may not sue a present client without that client's written consent; that FFIC did not consent to Crosby representing Truck; that Crosby thereby breached its duty of loyalty toward FFIC; and that a per se rule of disqualification applied.

Truck, on the other hand, argued that since Crosby had withdrawn as counsel for FFIC in the wrongful termination cases, FFIC was now only Crosby's former client. The issue, Truck contended, was therefore whether Crosby's former representation of FFIC in those cases was substantially related to the present case so as to give Crosby access to confidential information now helpful to Truck. Truck argued that since there was no factual or legal connection between this and the wrongful termination cases, Crosby possessed no confidential information that could be misused to FFIC's prejudice.

C. *Hearing on Motion*

Before the March 14, 1991, hearing on the motion, the trial court issued a tentative ruling indicating its intent to grant FFIC's motion to disqualify Crosby. The trial court found that Crosby was already representing FFIC when it undertook to represent Truck, as well as when FFIC filed its motion

---

[3]Unless otherwise indicated, all references hereafter to rules are to the Rules of Professional Conduct of the State Bar of California.

to disqualify Crosby. The court explained that an attorney may not represent an interest adverse to a current client without that client's approval, even if the attorney withdraws from the other cases before the motion to disqualify is heard.

During the hearing, the court acknowledged that this case presented a "hybrid" situation involving "an existing [representation] with an intent to depart." The court recognized that conflict problems of large compartmentalized law firms and insurance companies differ from those of sole practitioners representing private individuals, but it saw no reason why different rules should apply. Clarifying its tentative ruling, the court stated that absent a recognized exception, the per se disqualification rule used in concurrent representation cases applied. The court reaffirmed its order disqualifying Crosby.[4]

## II. DISCUSSION

### A. *Standard of Review*

██ When reviewing an order granting or denying a motion to disqualify, a reviewing court defers to the trial court's decision, absent an abuse of discretion. (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585 [283 Cal.Rptr. 732]; *Gregori* v. *Bank of America* (1989) 207 Cal.App.3d 291, 300 [254 Cal.Rptr. 853].) Discretion is deemed abused when there is a failure to exercise discretion in a situation where such exercise is required. (*Gardner* v. *Superior Court* (1986) 182 Cal.App.3d 335, 338-339 [227 Cal.Rptr. 78]; *Nadler* v. *Superior Court* (1967) 255 Cal.App.2d 523, 524 [63 Cal.Rptr. 352].) ██ In the instant case, the trial court applied a per se standard of disqualification based upon the finding of "concurrent" representation. Truck contends that the trial court applied an incorrect standard and, in doing so, failed to exercise its discretion which is required under the "former" representation standard.

### B. *The Rule*

Rule 3-310, effective May 27, 1989, provides in relevant part: "(B) A member shall not concurrently represent clients whose interests conflict, except with their informed written consent . . . ." The rule is clear in prohibiting an attorney from representing two or more clients at the same time whose interests conflict, unless there is informed written consent.

The undisputed facts before the trial court established that Crosby, knowing that it was representing FFIC in the wrongful termination cases, nevertheless agreed to begin representing Truck against FFIC in the insurance

---

[4]On July 25, 1991, this court granted Truck's petition for a writ of supersedeas, staying the order disqualifying Crosby from representing Truck (A053922).

coverage case. In doing so, Crosby did not obtain the informed written consent of FFIC, and proceeded with its representation of Truck after such consent was explicitly denied. There was, therefore, concurrent representation of clients whose interests conflicted, with no informed written consent.

On its face, rule 3-310(B) was violated.

## C. *Withdrawal as a Cure for Rule Violation*

Also undisputed is the fact that prior to the hearing on FFIC's motion to disqualify, Crosby had withdrawn from its representation of FFIC in the wrongful termination cases. Truck argues that this withdrawal rendered FFIC a former client and that, as such, the less severe former representation standard (see *Global Van Lines* v. *Superior Court* (1983) 144 Cal.App.3d 483 [192 Cal.Rptr. 609]), rather than the standard governing concurrent representation, should have been applied. We disagree.

In cases involving the representation of a client against a former client, "the initial question is 'whether the former representation is "substantially related" to the current representation.' (See *Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 998, and authorities cited therein.)" (*Global Van Lines* v. *Superior Court, supra*, 144 Cal.App.3d at p. 488, fn. omitted.) "Substantiality is present if the factual contexts of the two representations are similar or related." (*Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 998.) If a substantial relationship exists, courts will presume that confidences were disclosed during the former representation which may have value in the current relationship. Thus, actual possession of confidential information need not be proven when seeking an order of disqualification. (*Civil Service Com.* v. *Superior Court* (1984) 163 Cal.App.3d 70, 79-80 [209 Cal.Rptr. 159].)

In contrast, in the concurrent representation context "[t]he principle precluding representing an interest adverse to those of a current client is based not on any concern with the confidential relationship between attorney and client but rather on the need to assure the attorney's undivided loyalty and commitment to the client. [Citations.]" (*Civil Service Com.* v. *Superior Court, supra*, 163 Cal.App.3d at p. 78, fn. 1.) This distinction between former representation and concurrent representation, and the distinct concerns at issue, are well recognized: "In contrast to representation undertaken adverse to a *former* client, representation adverse to a *present* client must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." (*Unified Sewerage Agency, etc.* v. *Jelco Inc.* (9th Cir. 1981) 646 F.2d 1339, 1345, italics in original; see also *Cinema 5, Ltd.* v. *Cinerama, Inc.* (2d Cir. 1976)

528 F.2d 1384, 1386.) If this duty of undivided loyalty is violated, "public confidence in the legal profession and the judicial process" is undermined. (See *In re Yarn Processing Patent Validity Litigation* (5th Cir. 1976) 530 F.2d 83, 89.)

 Since Crosby unquestionably owed a duty of loyalty and commitment to FFIC, was that duty satisfied by Crosby's withdrawal of representation of FFIC before the hearing on the motion to disqualify? Simply put, may the automatic disqualification rule applicable to concurrent representation be avoided by unilaterally converting a present client into a former client prior to hearing on the motion for disqualification? We answer each question in the negative and hold, consistent with all applicable authority, that a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing. (See *Unified Sewerage Agency, etc.* v. *Jelco Inc.*, *supra*, 646 F.2d at p. 1345; *Picker Intern., Inc.* v. *Varian Associates, Inc.* (N.D.Ohio 1987) 670 F.Supp. 1363, 1366, affd. (Fed. Cir. 1989) 869 F.2d 578; *Harte Biltmore Ltd.* v. *First Pennsylvania Bank, N.A.* (S.D.Fla. 1987) 655 F.Supp. 419, 421; *Ransburg Corp.* v. *Champion Spark Plug Co.* (N.D.Ill. 1986) 648 F.Supp. 1040; *Margulies by Margulies* v. *Upchurch* (Utah 1985) 696 P.2d 1195.) Indeed, Truck's position to the contrary has been repeatedly rejected by numerous authorities in no uncertain terms.

In *Unified Sewerage Agency, etc.* v. *Jelco Inc.*, *supra*, 646 F.2d 1339, the Ninth Circuit, in discussing the concurrent representation standard, rejected the precise contention urged by Truck herein: "This standard continues even though the representation ceases prior to filing of the motion to disqualify. If this were not the case, the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client." (*Id.*, at p. 1345, fn. 4.) Similarly, in *Picker Intern., Inc.* v. *Varian Associates, Inc.*, *supra*, 670 F.Supp. 1363, the court, in construing Ohio's concurrent or simultaneous representation rule (DR 5-105 of the Code of Prof. Responsibility) stated: "The rationale behind this rule is that a firm owes a client a duty of undivided loyalty. [Citation.] This is true even though a firm may cease representing a client before the disqualification motion is made. Otherwise, a firm could avoid D.R. 5-105 by simply converting a present client into a former one. [Citations.]" (670 F.Supp. at p. 1366.) The Utah Supreme Court, in construing its rule prohibiting concurrent representation (canon 5 of the Utah Code of Prof. Responsibility), concluded rather clearly: "It is our strong view that an attorney who is simultaneously representing two clients with differing interests should not be able to avoid conforming to Canon 5 by simply dropping one of the clients at his

option when a disqualification motion is filed. [Citations.] Otherwise, little incentive would exist for attorneys to avoid dual employment by adverse parties in the first place." (*Margulies by Margulies v. Upchurch, supra,* 696 P.2d at pp. 1202-1203.) "To hold otherwise would allow such unethical behavior to continue unrestricted because a law firm could always convert a present client to a former client merely by seeking to withdraw after suing a present client. [Citation.] A client's right to the undivided loyalty of its attorney requires more than this." (*Ransburg Corp. v. Champion Spark Plug Co., supra,* 648 F.Supp. at p. 1044.)

We agree with the rationale of the foregoing authorities and see no reason to depart therefrom. In fact, Truck has provided us with no authority justifying departure in our case from this well-established principle requiring automatic disqualification.

In its brief, we are told by Truck that the "proper rule under these circumstances is set forth in *Florida Insurance Guarantee Associated, Inc. v. Carey Canada,* 749 F.Supp. 255, 261 (S.D.Fla. 1990)," from which the following language is extracted: "When counsel, upon discovery and absent consent, immediately withdraws from a concurrent adverse representation, the proper disqualification standard is expressed in the former representation rule. Otherwise, to require disqualification for the *mere happenstance of an unseen concurrent adverse representation*—where the representations are not substantially related and client confidences are not endangered—would unfairly prevent a client from retaining counsel of choice and would penalize an attorney who had done no wrong." (*Florida Ins. Guar. Ass'n, Inc. v. Carey Canada* (S.D.Fla. 1990) 749 F.Supp. 255, 261, italics added.) We agree with Truck that "the proper rule under the circumstances" is announced in *Carey Canada* but it certainly is not the rule Truck purports to glean from that case.

In *Carey Canada,* a law firm (Shackleford) was separately representing Florida Insurance Guaranty Association (FIGA) and Carey Canada in a nonconflicting context. When several insurers of Carey Canada became insolvent, FIGA was mandated by state law to step "into the shoes of the insolvent insurers" and thus became "the object of Carey Canada's asbestos related claims." (749 F.Supp. at p. 257.) When FIGA filed an action seeking declaratory relief to resolve its obligations with Carey Canada, Shackleford appeared on behalf of Carey Canada after withdrawing from representation of FIGA. FIGA moved to disqualify and the court *granted* the motion concluding that there had not been an immediate withdrawal "upon discovery of the conflict of interest and failure to obtain consent." (*Id.,* at p. 261.) Significantly, in explaining the language relied on by Truck, the court stated: "The option of dismissing FIGA, obviously, would not be available to

Shackleford if Carey Canada were a new client that had come along subsequent to the conflict arising. [Citation.]" (*Id.*, at pp. 260-261.)

Under our facts, there was no "mere happenstance of an unseen concurrent adverse representation." There was nothing happenstance or unseen in terms of concurrent adverse representation when Crosby agreed to represent Truck against its client, FFIC. In agreeing to represent Truck, Crosby knew that it was undertaking concurrent adverse representation and that it was doing so without the consent of FFIC. Under no circumstances can this activity be characterized as inadvertent, happenstance, or unseen. Whether the withdrawal of representation of FFIC was, therefore, immediate or delayed, is of no consequence because, under *Carey Canada*, the option of dismissing FFIC "obviously, would not be available . . . ." (749 F.Supp. at p. 260.)

The unavailability of withdrawal as a means of escaping application of the per se disqualification rule when a law firm creates the conflict was recently discussed in *Gould, Inc.* v. *Mitsui Min. & Smelting Co.* (N.D.Ohio 1990) 738 F.Supp. 1121. In *Gould*, the concurrent representation arose as a result of an acquisition by a party being sued of a company represented by the law firm. In finding an "exception" to the rule requiring disqualification, the court relied upon the fact that the law firm "did not create the IGT [the company acquired] conflict." (*Id.*, at p. 1127.) In discussing the general rule of disqualification, the court stated: "These other decisions, in large part, are based on the premise that courts should not allow a law firm to profit from a conflict of interest which it created. This is the potential result when a law firm discards a less profitable relationship in contemplation of taking on a more profitable, conflicting representation . . . . In such cases, law firms will not be permitted to drop one client in favor of another at the late date when it is called to the attention of the court." (*Ibid.*; see also *Ex Parte AmSouth Bank, N.A.* (Ala. 1991) 589 So.2d 715, 722 [recognizing the *Gould* exception "provided that the law firm did not play a role originally in creating the conflict of interest"].)

As heretofore discussed, at the time Crosby accepted representation of Truck against FFIC, the firm knew that it was representing FFIC in the wrongful termination litigation. By such action, Crosby must be viewed as having created the conflict. Having done so, Crosby cannot find refuge in the *Gould* exception and cannot avoid application of the concurrent representation rule of disqualification by withdrawing from its representation of FFIC. (See *Gould, Inc.* v. *Mitsui Min. & Smelting Co., supra*, 738 F.Supp. at p. 1127; see also *Florida Ins. Guar. Ass'n, Inc.* v. *Carey Canada, supra*, 749 F.Supp. at p. 261; *Ex Parte AmSouth Bank, N.A., supra*, 589 So.2d at p. 722.)

Truck finally contends that the automatic disqualification rule is harsh when applied to large law firms organized into specialty practice groups

representing institutional clients where such situations may arise "inadvertently." Two observations seem appropriate: (1) there was nothing inadvertent when the firm agreed to represent Truck while representing FFIC; (2) to the extent this argument implies or suggests that the duty of loyalty owed a client of a large law firm is somehow less than that owed to the client of a smaller firm or sole practitioner, we summarily reject the implication.

We conclude, therefore, as follows: that the undisputed facts establish adverse concurrent representation within the meaning of rule 3-310(B); that withdrawing from representation of FFIC before the hearing on the motion to disqualify did not convert concurrent representation into prior representation for purposes of assessing the conflict; that the trial court applied the correct standard of automatic disqualification because of the adverse concurrent representation; that the motion to disqualify was properly granted.

### III. CONCLUSION

The trial court's order disqualifying appellant Truck's attorney is affirmed. The writ of supersedeas heretofore issued is vacated and dissolved effective forthwith.[5]

Poché, Acting P. J., and Perley, J., concurred.

A petition for a rehearing was denied June 10, 1992, and appellant's petition for review by the Supreme Court was denied August 20, 1992. Lucas, C. J., and Panelli, J., were of the opinion that the petition should be granted.

---

[5] As heretofore noted, this court issued a writ of supersedeas staying the superior court's order disqualifying Crosby. That writ is now vacated and the disqualification order is in full force and effect. Although Crosby may pursue its appellate remedies on behalf of Truck in connection with this decision, the disqualification order obviously precludes Crosby from representing Truck in any capacity, including associate counsel, in superior court case No. 145126.