[No. B106208. Second Dist., Div. Four. Sept. 19, 1997.]

AMERICAN CASUALTY COMPANY OF READING, PA.,
Cross-complainant and Appellant, v.
MICHAEL O'FLAHERTY et al., Cross-defendants and Respondents.

**COUNSEL**

Radcliff, Frandsen & Dongell, Richard A. Dongell, Eric H. Saiki and Daniel E. Park for Cross-complainant and Appellant.

O'Flaherty & Belgum, John J. Weber, Robert M. Dato and Brian P. Barrow for Cross-defendants and Respondents.

**OPINION**

**EPSTEIN, Acting P. J.**—A hospital and a number of its professional staff, including a nurse, were sued by the heirs of a patient for wrongful death. The

insurance carrier for the hospital undertook the defense of that institution and its staff, and hired defense counsel for that purpose. The nurse had her own liability policy. Her insurance carrier refused to contribute toward a possible settlement. The verdict exceeded the limits of the hospital's primary policy, and the underlying case settled for the amount of the verdict before judgment was entered. The insurers are in litigation with respect to reimbursement from the nurse's insurer. The latter sued defense counsel for legal malpractice. Counsel obtained summary judgment against the nurse's insurer. That insurer has appealed from the judgment. We find no error and affirm.

### Factual and Procedural Summary

In December 1993, Laura Wood filed a wrongful death action (the Wood action) against Henry Mayo Newhall Memorial Hospital (the Hospital) and several physicians, alleging that her husband was given an overdose of morphine following routine surgery, which resulted in his death. Later, Michelle Gorman, a nurse at the hospital, was named as a defendant. American Continental Insurance Company (ACIC) issued two liability policies for the hospital; a primary policy with a limit of $1 million per claim, and an umbrella policy with a $10 million limit. As an employee of the hospital, Ms. Gorman was covered under both policies.

ACIC retained the law firm of O'Flaherty & Belgum (O'Flaherty) to represent the hospital and Ms. Gorman in the Wood action. After substantial discovery and two mandatory settlement conferences, Ms. Gorman told the attorney from O'Flaherty that she had a professional liability insurance policy with American Casualty at the time of the Wood incident.[1] O'Flaherty alerted ACIC that Ms. Gorman had her own insurance.

ACIC contacted American Casualty, outlined the current status of the case, and forwarded copies of deposition summaries and summaries of reviews conducted by expert witnesses for ACIC. ACIC took the position that damages in the Wood action were likely to exceed the $1 million limit of its primary policy with the Hospital. In that event, ACIC said: "It is our position that coverage for Nurse Gorman under ACIC's umbrella policy #92L333 will not be triggered until Nurse Gorman's $1,000,000 policy limit under policy #N4638848 with [American Casualty] has been exhausted." ACIC asked American Casualty to contribute the full $1 million limit of Ms. Gorman's policy for purposes of settlement discussions.

ACIC offered $1 million to settle the Wood action, but counsel for plaintiffs demanded $1.5 million. In a letter dated March 21, 1995, ACIC

---

[1]Ms. Gorman's policy was with American Casualty Company through CNA Insurance Co. We follow the parties' practice in referring to her insurer as American Casualty.

asked American Casualty to immediately contribute $500,000 to settle the case. In its opening brief, American Casualty asserts that it responded to this request by asking ACIC to settle the matter because it was in the best position to determine whether a particular settlement figure was reasonable. In its brief, American Casualty says: "Any contribution issues between the insurers, American Casualty explained, could be resolved at a later date. O'Flaherty was fully aware of American Casualty's position in this regard and also knew that American Casualty insured Gorman only, not the Hospital." This assertion is not supported by reference to the record on appeal. ACIC takes the position that American Casualty failed to respond to the March 21 request for contribution.

ACIC again requested a contribution from American Casualty on April 5, 1995. An attorney for American Casualty attended the status conference, but the case did not settle.

On May 9, 1995, the day jury selection was to begin in the Wood action, counsel for plaintiffs offered to dismiss Ms. Gorman from the action, contingent upon a stipulation that she waive costs and any claim of malicious prosecution by the plaintiffs, and that it be stipulated her actions were as an agent of the Hospital. The offer was to expire in minutes, when the jury panel was brought into the courtroom. In a declaration in support of O'Flaherty's motion for summary judgment in this case, Michael O'Flaherty declared that he discussed the settlement offer with Ms. Gorman: "We mutually agreed to reject the offer. Our sole motivation in rejecting the offer was to obtain a defense jury verdict for Ms. Gorman and, by virtue of agency, for her employer, the hospital. This was a tactical decision which I believed to be in the best interests of my clients."

Ms. Gorman testified, in deposition, that she had agreed with Mr. O'Flaherty's recommendation that she refuse the offer, basing the decision on Mr. O'Flaherty's advice, her distrust of the attorney for plaintiffs, her belief that it would be more difficult for the jury to render a verdict for plaintiffs if she was a defendant at the counsel table, and her desire to clear her name.

The Wood jury returned a verdict of $1,686,000 against the Hospital and Ms. Gorman. The case was settled for the amount of the verdict before judgment was entered. ACIC paid all fees and costs incurred in defense of the action, and the entire settlement. American Casualty did not contribute to the settlement.

After the Wood settlement, ACIC brought an action against American Casualty, seeking a declaration that American Casualty must contribute the

amount of settlement in excess of the $1 million provided under ACIC's primary policy. In its answer, American Casualty alleged as an affirmative defense that the ACIC complaint was barred because that firm—its agents, or retained counsel—"unreasonably refused to accept, or caused to be declined, the underlying plaintiffs' offer to dismiss the mutual insured, Michelle Gorman."

ACIC and American Casualty brought cross-motions for summary judgment or summary adjudication. American Casualty claimed it was entitled to summary judgment as a matter of law because "ACIC should be barred from this contribution action as a result of its conduct in refusing to dismiss American Casualty's insured from the underlying lawsuit; because ACIC's insured has a statutory duty to indemnify American Casualty's insured; and because American Casualty's insurance policy is excess to the ACIC's excess umbrella policy." ACIC sought summary adjudication on several of American Casualty's affirmative defenses. The trial court denied American Casualty's motion and granted ACIC's motion in its entirety. We are informed that the action between ACIC and American Casualty is still pending in the trial court.

Shortly after ACIC filed its motion, American Casualty brought a cross-complaint for legal malpractice, indemnification, and declaratory relief against the O'Flaherty firm and Michael O'Flaherty. (We now refer to them jointly as O'Flaherty.) The gravamen of the cross-complaint was that O'Flaherty committed malpractice by refusing the offer to dismiss Ms. Gorman from the underlying complaint and by failing to adequately advise Ms. Gorman concerning the settlement and of her right to independent counsel.

O'Flaherty moved for summary judgment. In essence, O'Flaherty argued that it owed no duty to American Casualty because it had no attorney-client relationship with that company. American Casualty opposed the motion, characterizing itself as an excess insurer, a point disputed by O'Flaherty. American Casualty argued that an excess insurer which is harmed by the negligence of defense counsel hired by the primary insurer may maintain an action for legal malpractice against the defense counsel.

The trial court granted O'Flaherty's motion. It explained: "Michael O'Flaherty and O'Flaherty & Belgum did not owe a duty to American Casualty Company of Reading, Pa., relative to any aspect of [the Wood action]. American Casualty Company of Reading, Pa., was not a client of Michael O'Flaherty and O'Flaherty & Belgum . . . ." The trial court also held that American Casualty was not entitled to indemnity on the cross-complaint because a claim for indemnity cannot be based on legal malpractice.

American Casualty filed a timely notice of appeal from the judgment.

## Discussion

" 'Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding. . . .' (§ 437c, subd. (a).) 'The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence . . . and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted . . . on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.' [Citations.] [¶] A defendant meets his or her burden on a motion for summary judgment if that party has proved there is a complete defense to the cause of action. (§ 437c, subd. (o)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. [Citations.] [¶] ■  On appeal, we independently assess the correctness of the trial court's ruling, applying the same legal standard as the trial court. [Citations.] ' "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it." [Citations.]' " (*Van Dyke* v. *Dunker & Aced* (1996) 46 Cal.App.4th 446, 450-451 [53 Cal.Rptr.2d 862].)

American Casualty relies entirely on *Unigard Ins. Group* v. *O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229 [45 Cal.Rptr.2d 565], to establish standing to sue for malpractice. We begin with a discussion of that opinion.[2] In *Unigard*, an insurer brought a legal malpractice action against the law firm *it* had retained to represent its insured in a personal injury action. The defendant law firm had failed to raise the defenses of workers' compensation exclusivity and the defendant's right to setoff for workers' compensation benefits paid.

The *Unigard* court first addressed the threshold issue of standing: whether an insurer has standing to bring a legal malpractice action against the law firm it retained to represent an insured. "We conclude that when, pursuant to insurance policy obligations, an insurer hires and compensates counsel to defend an insured, *provided that the interests of the insurer and insured are not in conflict*, the retained attorney owes a duty of care to the insurer which

---

[2]American Casualty does not attempt to justify its claim on the five-point test formulated in *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358] and followed in other decisions.

will support its independent right to bring a legal malpractice action against the attorney for negligent acts committed in the representation of the insured." (38 Cal.App.4th at p. 1235, italics in original.) The *Unigard* court limited its holding to situations in which the insurer does not raise or reserve any coverage dispute. (*Id.* at p. 1236.)

In reaching this holding, the *Unigard* court relied on a decision by the Michigan Supreme Court in *Atlanta Intern. Ins. Co.* v. *Bell* (1991) 438 Mich. 512 [475 N.W.2d 294]. It quoted the reasoning of the Michigan Supreme Court at length: " 'A rule of law expanding the parameters of the attorney-client relationship in the defense counsel-insurer context might well detract from the attorney's duty of loyalty to the client in a potentially conflict-ridden setting. Yet to completely absolve a negligent defense counsel from malpractice liability would not rationally advance the attorney-client relationship. Moreover, defense counsel's immunity from suit by the insurer would place the loss for the attorney's misconduct on the insurer. The only winner produced by an analysis precluding liability would be the malpracticing attorney. . . . [¶] The defense counsel-insurer relationship is unique. The insurer typically hires, pays, and consults with defense counsel. The possibility of conflict unquestionably runs against the insured, considering that defense counsel and the insurer frequently have a longstanding, if not collegial, relationship. [¶] In a malpractice action against a defense counsel, however, the interests of the insurer and the insured generally merge. The client and the insurer both have an interest in not having the case dismissed because of attorney malpractice. Allowing recovery for the insurer on the basis of the failure of defense counsel to adhere to basic norms of duty of care thus would not "substantially impair an attorney's ability to make decisions that require a choice between the best interests of the insurer and the best interests of the insured." . . . The best interest of both insurer and insured converge in expectations of competent representation.' [Citation.]" (38 Cal.App.4th at p. 1236.)

We follow the decision and rationale of *Unigard*. ▮ Barring a conflict between the insurer and its insured, it makes sense to allow an insurance carrier who has retained counsel to defend the interests of its insured as well as the carrier's own interests, to sue that attorney for malpractice. In that situation, the insurer has retained counsel and is entitled to expect counsel to fulfill the duty it has undertaken to the insurer. The only reason for the qualification that there be no conflict between the insurer and the insured is that the attorney's primary loyalty must be to the insured it was retained to defend. (See *Rockwell Intern. Corp.* v. *Superior Court* (1994) 26 Cal.App.4th 1255, 1267 [32 Cal.Rptr.2d 153]; *Purdy* v. *Pacific Automobile Ins. Co.* (1984) 157 Cal.App.3d 59, 76 [203 Cal.Rptr. 524].)

■ That is the antithesis of our case. Here, American Casualty did not retain O'Flaherty. It had nothing to do with O'Flaherty or the services that firm rendered. O'Flaherty owed it no duty. And, insofar as the claimed breach of duty (O'Flaherty's failure to accept plaintiffs' offer of a no-cost but conditional dismissal of Ms. Gorman) is concerned, there *was* a conflict between the interests of that client and American Casualty. In short, the rationale of *Unigard* is entirely lacking here.

American Casualty recognizes that Ms. Gorman has a theoretical cause of action against O'Flaherty. But, it points out, she is not motivated to pursue it. Indeed she is not—why should she? She has been entirely indemnified and has suffered no monetary loss.

American Casualty argues that the extension of *Unigard* it urges us to adopt will protect against collusion; it asks us to adopt a broad policy statement based on the possibility of collusion. We find no evidence of collusion here, and decline to adopt so broad a policy.

In light of this conclusion, we need not address the merits of American Casualty's malpractice claim.

Finally, in a footnote, American Casualty argues that O'Flaherty "affirmatively undertook" to convey settlement offers to American Casualty and keep it apprised of developments related to the Wood action, but failed to do so. The evidence does not support the claim. The record shows that settlement offers were conveyed to American Casualty in ACIC's futile efforts to obtain a contribution to settle the Wood action. Beyond that, we note that this argument was not presented to the trial court in opposition to O'Flaherty's motion for summary judgment. It is too late to raise it now. (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 570 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

## DISPOSITION

The judgment is affirmed. O'Flaherty shall have its costs on appeal.

Hastings, J., and Baron, J., concurred.