[No. F031707. Fifth Dist. June 18, 1999.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff and Respondent, v.
FEDERAL INSURANCE COMPANY, Defendant and Appellant.

## Counsel

Newton, Kastner & Remmel, Stephen L. Newton and O. Antony Abdollahi for Defendant and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Wade M. Hansard, Patrick D. Toole, Scott D. Laird and Todd M. Baxter for Plaintiff and Respondent.

## Opinion

**LEVY, J.**—The primary issue presented by this appeal is whether, for purposes of disqualification, the attorney representing an insured is also representing the insurance company. If the insurance company is a client, this case poses a secondary question regarding the applicable disqualification standard. The issue becomes whether the insurance company is a

"former" or a "concurrent" client when the attorney files a complaint naming the insurance company as a defendant and then settles the insured's case.

When presented with these issues, the trial court denied the disqualification motion. However, the obligations and duties an attorney owes to an insurance company in this situation support finding an attorney-client relationship for purposes of a disqualification motion. Additionally, the overlap in representation requires application of the "concurrent" client standard. Thus, the motion to disqualify should have been granted.

### STATEMENT OF THE CASE

In 1996, respondent, State Farm Mutual Automobile Insurance Company (State Farm) retained the law firm of McCormick, Barstow, Sheppard, Wayte & Carruth (McCormick) to advise State Farm regarding the coverage available to its insured, Gerawan Farming, with respect to personal injury actions arising out of a motor vehicle accident. McCormick and State Farm concluded that insurance policies issued by appellant, Federal Insurance Company (Federal), provided additional coverage for this accident. McCormick relayed this information to Federal's coverage counsel. However, Federal disagreed with State Farm's conclusion and refused to voluntarily participate in the Gerawan Farming cases. The last contact McCormick had with Federal's coverage counsel regarding this issue was in September 1996.

In January 1997, Federal retained McCormick to represent its insured, C & S Distributing Company, in a case entitled Pinion v. Clark-Stebbins, Inc. (Super. Ct. Tulare County, 1996, No. 96177104) (Pinion). Federal did not dispute coverage in this matter and thus proceeded to provide a defense for its insured without a reservation of rights.

On February 4, 1998, State Farm filed this action against Federal for declaratory relief and subrogation damages. State Farm is asserting that policies issued by Federal provided additional coverage for the Gerawan Farming cases. State Farm defended Gerawan Farming in these actions and now seeks contribution from Federal for all the costs and expenses it incurred. This complaint was filed on behalf of State Farm by McCormick.

On March 6, 1998, approximately one month after the complaint was filed, Federal, through its defense counsel, Stephen Newton of Newton, Kastner & Remmel, advised McCormick that Federal objected to McCormick's continued representation of State Farm. Federal based its objection

on California Rules of Professional Conduct, rule 3-310[1] "which requires [McCormick] to refrain from proceeding with a claim against Federal of an adverse nature given the fact that [McCormick] has represented and does presently represent insureds of Federal as well as Federal itself and other members of the Chubb Group of Insurance Companies." McCormick did not respond to this letter.

On April 7, 1998, Federal reiterated its objection to McCormick's representation of State Farm. However, McCormick again did not respond to the letter.

On May 28, 1998, the parties in the Pinion action settled the matter at mediation.

Also on May 28, 1998, State Farm commenced discovery in this case. In response, Federal filed the motion to disqualify McCormick. Federal further sought a protective order relieving Federal from the obligation of responding to the discovery requests until McCormick withdrew as counsel for State Farm.

The trial court denied the motion. The court did not make a specific finding regarding the existence of an attorney-client relationship. Rather, the court relied primarily on its conclusion that Federal's status was that of a " 'former' " client by the time the motion was filed. Accordingly, the court applied the " 'substantial relationship' " test for disqualification. Under this test, the court found disqualification was not required. The trial court also noted that Federal could be considered to have given " 'implied consent' " to the potential conflict in that Federal's coverage counsel was in contact with McCormick regarding State Farm's adverse position approximately two years before this lawsuit was filed.

### DISCUSSION

██ When reviewing an order granting or denying a motion to disqualify counsel, the appellate court defers to the trial court's decision, absent an abuse of discretion. (*Truck Ins. Exchange* v. *Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1055 [8 Cal.Rptr.2d 228].) Thus, the court is bound by the trial court's express or implied factual findings so long as those findings are supported by substantial evidence. (*In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561 [20 Cal.Rptr.2d 132].)

---

[1]All further rule references are to the California Rules of Professional Conduct unless otherwise indicated.

However, the appellate court independently reviews the resulting legal conclusions. (*In re Marriage of Zimmerman, supra,* 16 Cal.App.4th at p. 561.) In exercising discretion, the trial court is required to make reasoned judgments which comply with legal principles and policies. Consequently, the trial court's ruling is subject to reversal where there is no reasonable basis for the action taken. (*Metro-Goldwyn-Mayer, Inc.* v. *Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1838 [43 Cal.Rptr.2d 327].)

*The motion to disqualify McCormick should have been granted.*

■ The issue of disqualification ultimately involves a conflict between a client's right to chosen counsel and the need to maintain ethical standards of professional responsibility. (*Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562].) However, the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar. Consequently, the recognizably important right to choose one's counsel must yield to the ethical considerations that embody the moral principles of our judicial process. (*Ibid.*)

The applicable standard of professional responsibility regarding representation of clients with adverse interests is found in rule 3-310. That rule provides, in part:

"(C) A member shall not, without the informed written consent of each client:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."

Obviously, this rule is inapplicable if the adverse action is taken against a person or entity who is not also a client. Thus, preliminarily, the complaining party's "client status" must be ascertained.

a. *Federal was McCormick's client.*

■ The issue of whether an attorney-client relationship is formed between an insurance company and the counsel it hires to defend an insured has arisen in several contexts. In analyzing these situations, the courts have described counsel's representation as "triangular." (*Purdy* v. *Pacific Automobile Ins. Co.* (1984) 157 Cal.App.3d 59, 76 [203 Cal.Rptr. 524].) In other

words, the attorney represents two clients, the insured and the insurer. (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 146 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) This trio has been portrayed as a "loose partnership, coalition or alliance directed toward a common goal, sharing a common purpose which lasts during the pendency of the claim or litigation against the insured." (*American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 592 [113 Cal.Rptr. 561].) "Conceptually, each member of the trio, attorney, client-insured, and client-insurer[,] has corresponding rights and obligations founded largely on contract, and as to the attorney, by the Rules of Professional Conduct as well." (*Ibid.*)

Based on this reasoning, it has been held that an insurance company is *a client* with respect to its ability to assert the attorney-client privilege under Evidence Code section 954. (*American Mut. Liab. Ins. Co.* v. *Superior Court, supra,* 38 Cal.App.3d 579.) Between the attorney and the insurer who retained the attorney and paid for the defense, there exists a separate attorney-client relationship endowed with confidentiality. (*Id.* at pp. 591-592.)

Further, an insurance company has an independent right, *as a client,* to bring a legal malpractice action against the counsel it hired to defend its insured. (*Unigard Ins. Group* v. *O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1236-1237 [45 Cal.Rptr.2d 565]; *American Casualty Co.* v. *O'Flaherty* (1997) 57 Cal.App.4th 1070, 1076 [67 Cal.Rptr.2d 539].) In the absence of a conflict of interest between the insurer and the insured that would preclude an attorney from representing both, the attorney has a dual attorney-client relationship with insurer and insured. (*Unigard Ins. Group* v. *O'Flaherty & Belgum, supra,* 38 Cal.App.4th at pp. 1236-1237.) Thus, the insurer has retained counsel and is entitled to expect counsel to fulfill the duty it has undertaken to the insurer. (*American Casualty Co.* v. *O'Flaherty, supra,* 57 Cal.App.4th at p. 1076.)

In analyzing this attorney-insurer-insured relationship, the courts have acknowledged that, as a practical matter, the attorney may have closer ties with the insurer than with the insured. (*Purdy* v. *Pacific Automobile Ins. Co., supra,* 157 Cal.App.3d at p. 76.) The insurer characteristically engages and pays the attorney to defend the insured. (*American Mut. Liab. Ins. Co.* v. *Superior Court, supra,* 38 Cal.App.3d at p. 591.) Further, it is customary for the insurer to control the defense it provides. (*Spindle* v. *Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 714 [152 Cal.Rptr. 776].)

 There is no case law squarely addressing the disqualification issue presented by this appeal. State Farm relies on this dearth of authority to

support its position that Federal was not one of McCormick's clients when the underlying complaint was filed. However, the fact that an appellate opinion has not considered whether an insurer is a client in this context is not dispositive.

Although State Farm can garner some support for its position through certain out-of-state authority, the analysis of the attorney-insurer-insured relationship that has been established by California law dictates a contrary result. For example, the Michigan Supreme Court held that a legal malpractice action instituted by the insurer against the counsel it hired to defend the insured could go forward despite its conclusion that the connection between the attorney and the insurer is "less than a client-attorney relationship." (*Atlanta Intern. Ins. Co.* v. *Bell* (1991) 438 Mich. 512 [475 N.W.2d 294, 297].) However, to reach this conclusion, the Michigan court relied on the doctrine of equitable subrogation. This is not the law in California. Rather, such malpractice actions have been upheld in California because the courts have acknowledged the existence of an attorney-client relationship between an insurer and the counsel it hires to represent the insured. (*Unigard Ins. Group* v. *O'Flaherty & Belgum, supra,* 38 Cal.App.4th at p. 1236.)

Thus, based on the established California principles that govern the attorney's relationship with the insurer who retains the attorney to defend the insured without asserting a reservation of rights, we hold that Federal was McCormick's client for purposes of this disqualification motion. To hold otherwise would require an exception to existing law. Any such change, if warranted, should be made by either the Legislature or the California Supreme Court.

 b. *McCormick simultaneously represented clients with adverse interests.*

With respect to disqualification of counsel based on representation of potentially conflicting parties, two standards have evolved based on the status of those clients. If the attorney is representing a client with interests that are adverse to a former client, the test used for disqualification is whether there is a "substantial relationship" between the subjects of the current and former representation. (*Flatt* v. *Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950].) In this successive representation situation, "the chief fiduciary value jeopardized is that of client *confidentiality.*" (*Ibid.*) Thus, if a substantial relationship exists, the court will presume that confidences were disclosed during the former representation which may have value in the current relationship. (*Truck Ins. Exchange* v. *Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th at p. 1056.)

In contrast, where an attorney's representation of one client is adverse to the interests of another *current* client, the primary value at stake is the attorney's duty of *loyalty.* (*Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 284.) " '[R]epresentation adverse to a *present* client must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.' " (*Truck Ins. Exchange* v. *Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th at p. 1056.)

One aspect of this high and stringent obligation is the attorney's duty to protect the client in every possible way. Consequently, it is a violation of the duty of loyalty for the attorney to assume a position adverse or antagonistic to his or her client without the client's free and intelligent consent given after full knowledge of all the facts and circumstances. (*Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 289.) A client who learns that his or her lawyer is also representing a litigation adversary, even in a wholly unrelated matter, cannot be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship. (*Id.* at p. 285.) Thus, even though the simultaneous representations may have nothing in common, and there is no risk that confidences to which counsel is a party in the one case have any relation to the other matter, per se or automatic disqualification is required in all but a few instances. (*Id.* at p. 284.)

■ Here, McCormick was representing Federal in the Pinion matter when McCormick filed the underlying complaint against Federal on behalf of State Farm. Approximately three months later, the Pinion case settled. Thus, there existed a period of time during which McCormick was simultaneously representing clients with adverse interests. Further, before the settlement, Federal's counsel alerted McCormick to this alleged conflict. Nevertheless, the trial court analyzed the relationship as if it were a successive representation and applied the substantial relationship test on the ground that the Pinion case had concluded by the time the disqualification motion was heard.

■ However, so inviolate is the duty of loyalty to an existing client that the attorney cannot evade it by withdrawing from the relationship. (*Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 288.) Accordingly, in *Truck Ins. Exchange* the court upheld the disqualification of a law firm that had knowingly taken on the prosecution of an action against a present client even though the firm thereafter withdrew as counsel for the present client. Thus, the attorney cannot avoid the automatic disqualification rule applicable to concurrent representation by unilaterally converting a present client into a former client prior to the hearing on the motion for disqualification. (*Truck Ins. Exchange* v. *Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th at p. 1057.)

██ As part of its analysis, the court in *Truck Ins. Exchange* v. *Fireman's Fund Ins. Co.* discussed an exception to the automatic disqualification rule which was noted in the federal case of *Florida Ins. Guar. Ass'n, Inc.* v. *Carey Canada* (S.D.Fla. 1990) 749 F.Supp. 255, 261. (6 Cal.App.4th at p. 1058.) This exception arises when counsel, upon discovery and absent consent, immediately withdraws from an unseen concurrent adverse representation which occurred by "mere happenstance." Under those circumstances, the proper disqualification standard is the former representation rule. (*Ibid.*) Nevertheless, the court in *Florida Ins. Guar. Ass'n* granted the disqualification motion on the ground the attorney had not immediately withdrawn " 'upon discovery of the conflict of interest and failure to obtain consent.' " (*Ibid.*)

*Truck Ins. Exchange* also noted another "exception" which has been applied by a federal court. In *Gould, Inc.* v. *Mitsui Min. & Smelting Co.* (N.D.Ohio 1990) 738 F.Supp. 1121, the court permitted the attorney to withdraw as a means of escaping application of the per se disqualification rule where the concurrent representation arose as a result of an acquisition of the client by another company. However, for this exception to apply it is critical that the attorney not have played any role in creating the conflict of interest. (*Truck Ins. Exchange* v. *Fireman's Fund Ins. Co., supra,* 6 Cal.App.4th at p. 1059.)

██ Here, McCormick neither purposefully attempted to convert a current client into a former client by withdrawal from the case nor became involved in a conflict situation through no fault of its own. Rather, after three months of concurrent representation, the Pinion matter resolved itself through settlement. Because McCormick did not unilaterally end its representation of Federal by withdrawing from the Pinion case, the trial court concluded Federal was a former client.

However, the fact that the Pinion case happened to settle before the disqualification motion was heard should not absolve McCormick from its ethical obligations toward Federal. McCormick knowingly undertook adverse concurrent representation when it filed the underlying complaint. Even if McCormick had initially been unaware of this adverse representation, Federal's counsel notified McCormick of the conflict on at least two occasions before the Pinion case settled. Nevertheless, McCormick took no action in response. Thus, the "exceptions" noted above do not apply.

Therefore, although this fortuitous settlement acted to sever McCormick's relationship with its preexisting client, it did not remove the taint of a

three-month concurrent representation. Consequently, the mandatory disqualification rule applies. (*Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 286.) In light of this conclusion, it is inappropriate to consider the substantial relationship test and its concomitant "balancing of competing interests" components. (Cf. *William H. Raley Co.* v. *Superior Court* (1983) 149 Cal.App.3d 1042, 1048 [197 Cal.Rptr. 232].)

c. *Federal's conduct did not constitute implied consent to the adverse representation.*

State Farm takes the position that Federal consented to the adverse representation by referring cases, including Pinion, to McCormick at a time when Federal was aware of both McCormick's representation of State Farm and State Farm's potential lawsuit against Federal. In other words, Federal created the conflict. State Farm further argues that Federal waived its right, if any, to bring a disqualification motion due to delay.

As noted above, before McCormick agreed to represent Federal's insured in the Pinion matter, McCormick and Federal's coverage counsel, Joyce Andrews of Langley, Lamberto, Kreger & Moher, discussed their clients' respective positions. On February 27, 1996, almost two years before the underlying complaint was filed, McCormick, acting on behalf of State Farm, contacted Ms. Andrews. McCormick informed Ms. Andrews that State Farm believed the Federal policies issued to Gerawan Farming provided additional coverage for the motor vehicle accident that State Farm was defending on behalf of Gerawan Farming. However, Ms. Andrews responded that Federal disagreed with State Farm's conclusion and thus Federal would not voluntarily participate in the Gerawan Farming cases. It appears the last contact the respective coverage counsel had with each other on this issue was a letter from Ms. Andrews to McCormick dated September 10, 1996. The Pinion matter was referred to McCormick in January 1997 and State Farm's action against Federal was filed on February 4, 1998.

State Farm correctly notes that motions to disqualify are often used as a tactical device to delay litigation. (*Metro-Goldwyn-Mayer, Inc.* v. *Tracinda Corp., supra,* 36 Cal.App.4th at p. 1847.) State Farm argues such a motive should be ascribed to Federal in that Federal unreasonably waited over two years to bring the disqualification motion.

In successive representation situations, there exists a narrow exception to the rules requiring disqualification based on delay. (*River West, Inc.* v. *Nickel* (1987) 188 Cal.App.3d 1297, 1309 [234 Cal.Rptr. 33].) If the former client opposing the disqualification motion can demonstrate there

was an unreasonable delay in bringing the motion which caused prejudice to the present client, disqualification should not be ordered. (*Western Continental Operating Co.* v. *Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 763 [261 Cal.Rptr. 100].) However, because of the law's concern for unhampered counsel on both sides of the litigation, " 'mere delay' " in making a disqualification motion is not dispositive. "The delay must be extreme in terms of time and consequence." (*River West, Inc.* v. *Nickel, supra,* 188 Cal.App.3d at p. 1311.)

Here, although State Farm and Federal were taking opposing positions on coverage in the Gerawan Farming cases in 1996, the actual complaint was not filed until February 1998. Until the complaint was filed, the trial court could not rule on a motion to disqualify McCormick under the aegis of the subject action. Federal brought the conflict to McCormick's attention approximately one month after the complaint was filed.

Thus, delay is not a factor in this case. Rather, the issue is whether Federal's conduct in referring cases to McCormick while there was a possibility that one of McCormick's existing clients would pursue Federal on a subrogation claim constitutes implied consent by conduct.

The possibility of there being implied consent to adverse representation by conduct other than delay was suggested as an alternative ground for the ruling on an attorney disqualification issue in *Health Maintenance Network* v. *Blue Cross of So. California* (1988) 202 Cal.App.3d 1043 [249 Cal.Rptr. 220]. There, the attorney for the plaintiff, Health Maintenance Network (Health Net), had previously represented the defendant, Blue Cross of Southern California. Blue Cross had helped to establish Health Net and, in doing so, had provided this attorney to act as Health Net's counsel. In attempting to undo bylaw amendments adopted by Health Net, Blue Cross argued that Health Net's attorney betrayed the obligations and duties he owed to Blue Cross as a former client. However, contrary to Blue Cross's position, the court concluded there was no conflict of interest. Additionally, the court noted that, in light of Blue Cross's involvement with establishing Health Net and providing its counsel, "Blue Cross implicitly consented to any adverse representation and may not now complain because of it." (202 Cal.App.3d at p. 1064.)

However, there is one critical distinguishing factor between *Health Maintenance Network* v. *Blue Cross of So. California* and the instant case. Blue Cross was a *former* client. The case does not hold or suggest that *current* clients can impliedly consent to conflicted representation. This distinction

was noted by the court in *Blecher & Collins, P.C.* v. *Northwest Airlines, Inc.* (C.D.Cal. 1994) 858 F.Supp. 1442. ■ "The need to protect clients justifies applying different standards to conflicts between current clients and conflicts between former and current clients. By not allowing implied waivers of a conflict between co-parties, the law places all of the burden of disclosure and consent on the attorney, where it belongs." (*Id.* at p. 1455, fn. 14.)

■ Additionally, in *Health Maintenance Network* v. *Blue Cross of So. California, supra,* 202 Cal.App.3d 1043, Blue Cross was clearly aware of a potential for adverse representation when it provided Health Net with counsel. In contrast here, the trial court believed that neither Federal's attorney nor McCormick was actually aware of the conflict until the underlying action was filed. However, it is the attorney who is charged with the responsibility of performing conflict checks upon accepting a new client. The client is under no such obligation. (*Image Technical Services, Inc.* v. *Eastman Kodak Co.* (N.D.Cal. 1993) 820 F.Supp. 1212, 1217.) This responsibility is reflected in rule 3-310 which prohibits the attorney from accepting employment adverse to a current client without the client's informed written consent.

Thus, the burden was on McCormick to avoid creating a conflict. McCormick should not have accepted the cases referred by Federal when it was aware that it might be filing a lawsuit against Federal on behalf of another client. Consequently, there is no basis for finding that Federal impliedly consented to the adverse representation.

In sum, Federal was one of McCormick's clients when McCormick filed the complaint against Federal on behalf of State Farm. Further, this adverse representation was concurrent. Thus, the motion to disqualify McCormick from representing State Farm in the underlying action should have been granted.

### DISPOSITION

The trial court is directed to vacate the "ORDER RE: FEDERAL'S MOTION TO DISQUALIFY, FOR A PROTECTIVE ORDER AND FOR MONETARY SANCTIONS" filed August 20, 1998, and to enter a new order granting the motion to disqualify. Costs on appeal are awarded to appellant.

Harris, J., concurred.

**DIBIASO, Acting P. J.,** Concurring.—My vote to reverse is registered with reluctance. I find persuasive many of the reasons advanced in favor of the

principle that the relationship between an insurer and counsel selected to defend the insured is not one of attorney-client. (See, e.g., Pepper, *Applying the Fundamental of Lawyers' Ethics to Insurance Defense Practice* (1997) 4 Conn. Ins. L.J. 27; Silver, *Does Insurance Defense Counsel Represent the Company or the Insured?* (1994) 72 Tex. L.Rev. 1583; O'Malley, *Ethics Principles for the Insurer, the Insured, and Defense Counsel: The Eternal Triangle Reformed* (1991) 66 Tul. L.Rev. 511, 512; Winiarski, *Walking the Fine Line: A Defense Counsel's Perspective* (1993) 28 Tort & Ins. L.J. 596, 597; see also *Atlanta Intern. Ins. Co. v. Bell* (1991) 438 Mich. 512 [475 N.W.2d 294].) However, the adherence by the courts of this state to the contrary rule, in a variety of contexts, has been of long-standing consistence. It is thus for the Supreme Court or the Legislature, and not for this court, to overturn this history of authority, if it is to be overturned.

In addition, I am not convinced the concept of implied consent is of relevance solely to cases involving successive representation. At least one court (*In re Lee G.* (1991) 1 Cal.App.4th 17, 27 [1 Cal.Rptr.2d 375]) has not foreclosed the application of the theory where concurrent representation is in issue. I realize that a federal district court, applying its view of California law, has held that implied consent (based upon inaction and delay) may be raised only when the representation is successive (*Blecher & Collins, P.C. v. Northwest Airlines, Inc.* (C.D.Cal. 1994) 858 F.Supp. 1442, 1455), but I would be prepared in a proper case to critically examine the district court's conclusion.

However, the subject is moot here because the record is simply insufficient to prove that Federal was aware McCormick was acting on behalf of State Farm when it referred the Pinion and other cases to McCormick (*Pinion v. Clark-Stebbins, Inc.* (Super. Ct. Tulare County, 1996, No. 96177104)). There is no evidence that any responsible official of Federal had actual knowledge that McCormick was representing State Farm in the coverage dispute at any time before State Farm brought its action against Federal. There is also no evidence to support the imputation to Federal under agency law of the knowledge possessed by Federal's counsel in the coverage matter, because the facts do not establish the necessary duty on the part of counsel to inform Federal of the identity of the law firm representing State Farm. (Rest.2d Agency, §§ 272, 275; see generally, 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 99, pp. 97-98, § 101, pp. 98-99.)[1]

Moreover, even assuming actual or imputed knowledge on the part of Federal, I do not find in this record a basis for a conclusion that Federal

---

[1] This is not to say the record is silent with respect to purposeful affirmative conduct by Federal. To the contrary, I might find it difficult to join the majority opinion if the trial court's

impliedly consented to the conflict by reason of inaction and delay, because extreme prejudice is not demonstrated by the evidence relevant to the motion. (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 599-600 [283 Cal.Rptr. 732].) At most, State Farm has shown that granting the disqualification motion will hamper the progress of its lawsuit against Federal, deprive it of knowledgeable, experienced counsel, and cause it to incur the expenses of engaging and educating new counsel. These effects do not prove extreme prejudice. (*Ibid.*)

Respondent's petition for review by the Supreme Court was denied September 29, 1999. Werdegar, J., and Chin, J., were of the opinion that the petition should be granted.

---

decision could be sustained under a standard of appellate review that required a "hunch" rather than substantial evidence. The facts in some of the declarations produced in connection with the motion give off a whiff of a suggestion that Federal's reference of the injury cases to McCormick was a step in a plan calculated to put McCormick in the position to be disqualified as counsel for State Farm, but an inference of evidentiary value to such effect cannot be drawn from these facts. Therefore, the hypothesis that Federal consented to the conflict by engaging McCormick with knowledge of McCormick's representation of State Farm, so as to gain an advantage in connection with the coverage dispute, is on the record only a speculative scenario.