Filed 5/13/14  Square One, Inc. v. Superior Court CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SQUARE ONE, INC., | D064840 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. 37-2013-00033527-CU-MC-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SQUARE ONE DEVELOPMENT, INC., | |
| Real Party in Interest. | |

PETITION for writ of mandate challenging order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Petition denied.

Higgs, Fletcher & Mack, John Morris, Steven J. Cologne, Victoria E. Fuller and Rahil K. Swigart for Petitioner.

No appearance for Respondent.

Galuppo & Blake, Louis A. Galuppo, Steven W. Blake and Kyle E. Yaege for Real Party in Interest.

Petitioner Square One, Inc. (Square One) filed a petition for writ of mandate challenging an order denying its motion to disqualify counsel for Real Party in Interest Square One Development, Inc. (Development) in its action against Development for the transfer of certain business records. Square One contends the trial court erred by denying its disqualification motion because: (1) the legal problem involved in the instant action is substantially related to the legal problems involved in matters on which Development's counsel formerly represented Square One (successive representation theory); (2) Development's counsel concurrently represents Development and Square One in adverse matters (concurrent representation theory); (3) the evidence is insufficient to support the court's finding that Square One impliedly waived its right to file a disqualification motion; and (4) the evidence is insufficient to support the court's finding that Development would be prejudiced if it granted the motion. Because we conclude the trial court did not abuse its discretion by finding neither the successive representation nor the concurrent representation theory required disqualification of Development's counsel, we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Beginning in the 1980's, Michael Cafagna and Mark Mandell worked together and formed over 20 different limited partnerships, corporations, and limited liability companies to purchase, sell, develop, and manage real property, which affiliated entities

2

are sometimes cumulatively referred to by the parties as "Square One Enterprise" (Enterprise). In 1980, Square One was incorporated by Michael[1] and today all of its shares of stock are owned by members of the Cafagna family. Square One was and, according to Michael's son Kevin Cafagna, still is the general partner of three limited partnerships: Gaslamp Village, LP (GV), Rancho Vista Industrial, LP (RVI), and Temehqula Village, LP (TV).[2]

In 1983, Development was incorporated by Michael to develop and manage properties and oversee Enterprise. In 2006, Michael gave gifts of 25 percent of Development's stock to Mark, Mark's son Jonathan Mandell, and Michael's son Kevin, retaining the remaining 25 percent of its stock. Thereafter, the Cafagnas owned 50 percent of Development's stock and the Mandells owned 50 percent of its stock. Development entered into contracts with the three limited partnerships (i.e., GV, RVI, and TV) to manage their real property.

Following Michael's death in 2009, the Cafagnas and Mandells apparently had disagreements over the proper management of Enterprise's entities, which were being managed by Mark.[3] On December 31, 2012, Square One, presumably as general partner

---

[1]    We refer to members of the Cafagna and Mandell families by their first names to distinguish them from other members of the same family.

[2]    Development disputes that assertion and instead asserts that on January 17, 2013, Square One was removed as the general partner of those limited partnerships.

[3]    After his death, Michael's wife Sharon, as trustee of the Cafagna Family Trust, apparently became the owner of his 25 percent of Development's stock.

3

of the three limited partnerships, apparently gave notice to Development that its property management agreements with those partnerships would be terminated as of January 31, 2013. Square One also requested that Development turn over all business records for the limited partnerships.

In February 2013, after Development refused to turn over the business records for the three limited partnerships, Square One filed a complaint against Development alleging causes of action for injunctive relief, declaratory relief, and claim and delivery. The complaint sought injunctive relief requiring Development to turn over all business records of the three limited partnerships (GV, RVI, and TV) and a declaration that Development has no right to retain those business records and must turn them over to Square One, as the general partner of those limited partnerships. In July, Development, by its counsel, the Galuppo & Blake law firm (Galuppo), filed its answer to Square One's complaint.

On September 12, 2013, Square One, after Development's counsel apparently refused its request to recuse themselves, filed a motion to disqualify Kyle Yaege and Galuppo (Counsel) from representing Development in the instant action. Square One argued that Counsel should be disqualified because they concurrently represent Square One and Development in adverse matters and, in addition, Kyle and/or his wife, Eden, formerly represented Square One in matters involving legal problems or issues substantially related to the legal problems or issues involved in the instant action. In support of its motion, Square One submitted the declarations of Sharon Cafagna and

4

Kevin Cafagna and lodged certain documents. Development opposed the motion to disqualify Counsel, arguing the Yaeges' prior representation of Square One was not substantially related to Counsel's current representation of Development in the instant action and, in addition, there was no concurrent representation by Counsel of Square One and Development. In support of its opposition, Development submitted the declarations of Kyle Yaege, Eden Yaege, Mark Mandell, and Louis Galuppo. Square One filed a reply to Development's opposition.

The trial court issued a tentative ruling denying the motion to disqualify, stating in part:

> "[T]he Court finds that [Square One] has not carried its burden that would warrant disqualification of [Development's] counsel. Specifically, [Square One] has not shown that '([Counsel's]) former employment involved matters related to, or in conflict with, the present (litigation)' [citation]. Finally, the Court questions [Square One's] 'delay in bringing the motion' and finds that, 'disqualification would cause extreme prejudice to ([Development])' and that [Square One] impliedly waived its right to disqualify [Counsel]."

The court heard arguments of counsel, conducted an in camera review of unredacted copies of certain exhibits lodged by Square One, and then issued its order confirming its tentative ruling denying the motion to disqualify Counsel (Order).

Square One filed the instant petition for writ of mandate challenging the Order. Development filed an informal response. We issued an order to show cause why the relief requested should not be granted. Thereafter, Development filed a return and Square One filed a reply.

5

DISCUSSION

I

*Legal Standards for Disqualification of Counsel*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' [Citations.] Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145.) "Other factors to consider in deciding a motion to disqualify counsel include the attorney's interest in representing the client, the financial burden on the client to replace disqualified counsel, and the possibility that the disqualification motion is being used as a litigation tactic." (*Fremont Indemnity Co. v. Fremont General Corp.* (2006) 143 Cal.App.4th 50, 62.)

In general, there are two types of situations in which conflicts requiring the disqualification of counsel may arise--concurrent representation and successive representation. (*Cal West Nurseries v. Superior Court* (2005) 129 Cal.App.4th 1170,

6

1174.) "Whether or not disqualification is required in successive representation cases depends upon two variables: '(1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation, and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation.' " (*Santa Teresa Citizen Action Group v. City of San Jose* (2003) 114 Cal.App.4th 689, 711.) "This rule is based upon the potential violation of the lawyer's duty of confidentiality." (*Cal West*, at p. 1174.) "If a substantial relationship exists, courts will presume that confidences were disclosed during the former representation which may have value in the current relationship. Thus, actual possession of confidential information need not be proven . . . ." (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1056.)

In a concurrent representation case, the "substantial relationship" test does not apply. "Absent informed written consent, a lawyer may not concurrently represent clients who have actual or potential conflicts; nor may a lawyer represent one client against another in an unrelated matter. [Citations.] It is immaterial whether the lawyer possesses confidential information that could be misused to the prejudice of either client." (*Cal West v. Superior Court*, *supra*, 129 Cal.App.4th at p. 1175.) "The primary value at stake in cases of simultaneous or dual representation is the attorney's duty--and the client's legitimate expectation--of *loyalty*, rather than confidentiality." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284.) Therefore, the rule requiring disqualification of an

7

attorney who concurrently represents adverse interests is a per se or automatic rule. (*Ibid*.)

## II

### *Standard of Review*

In *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, we described the standard of review that applies to a trial court's decision to grant or deny a motion to disqualify counsel. "A trial court's ruling on a disqualification motion is reviewed under the deferential abuse of discretion standard. [Citations.] 'In exercising its discretion, the trial court must make a reasoned judgment that complies with applicable legal principles and policies.' [Citations.] 'The order is subject to reversal only when there is no reasonable basis for the trial court's decision.' [Citation.] [¶] 'In deciding whether the trial court abused its discretion, "[w]e are . . . bound . . . by the substantial evidence rule." ' [Citation.] The trial court's order is ' "presumed correct; all intendments and presumptions are indulged to support [it]; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court's resolution of any factual disputes arising from the evidence is conclusive." ' [Citations.] Hence, we presume the trial court found in [the prevailing party's] favor on 'all disputed factual issues.' [Citation.] Further, 'where there are no express findings, we must review the trial court's exercise of discretion based on implied findings that are supported by substantial evidence.' [Citation.] 'In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as

8

not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.' [Citation.] 'If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.' " (*Id*. at pp. 46-47.)

III

*Successive Representation*

Square One contends the trial court erred by concluding the successive representation rule did not apply in the circumstances of this case to require disqualification of Counsel. It asserts the legal problem involved in the instant action is substantially related to the legal problems or issues involved in matters in which Counsel formerly represented Square One.

A

In moving to disqualify Counsel from representing Development in this action, Square One argued that Eden Yaege and Kyle Yaege had formerly represented it in legal problems or matters that are substantially related to the legal problem involved in the instant action. In support of its motion, Square One submitted the declarations of Sharon Cafagna and Kevin Cafagna and lodged certain documents. Kevin's declaration stated in part:

> "4. . . . [T]he partnership agreements for each of the Limited Partnerships [i.e., GV, RVI, and TV] provide a specific two-step

9

process in order to remove Square One as the general partner. The limited partners have not met these specific requirements, so Square One remains the general partner of all three of the Limited Partnerships. . . . [¶] . . . [¶]

"8. [Development] also had Eden Yaege working for it. . . . [E]ventually she ended up as the outside counsel for [Enterprise]. . . .

"9. After graduating from law school in 2007, Eden continued her previous role with [Enterprise] [and] . . . eventually . . . became the general counsel for [Enterprise]. Eden would routinely advise Square One and other entities in [Enterprise] on issues such as:

"a. commercial leases for [RVI];

"b. tenant issues for [RVI];

"c. franchise agreements for [GV and TV];

"d. contracts for the entities;

"e. *on the law regarding limited partnerships and Square One's role as the general partner*;

"f. ensure that collection efforts were underway for matters where third parties owed money to any of the entities in [Enterprise];

"g. corporate and partnership compliance issues for all the entities;

"h. third party issues regarding telecommunication leases; and

"i. overseeing litigation matters for the Limited Partnerships. [¶] . . . [¶]

"11. . . . Eden provided transactional legal advice to [Square One]. Eden prepared trust documents for us . . . .

12. Kyle Yaege represented the entities in [Enterprise] and the Cafagna family in potential litigation matters. . . .

13. Kyle also represented individual entities in [Enterprise] in numerous litigation matters. Kyle and [Galuppo] have also

10

represented [TV] in recent negotiations for the sale of the real estate that entity owns.

14. Eden and Kyle had complete access to and Eden routinely reviewed confidential information for the Cafagna-owned entities, our family trusts, and Sharon and Michael's individual tax returns." (Italics added.)

Sharon's declaration stated in part:

"6. . . . Eden provided transactional legal advice to [Square One]. . . . She would update the corporate documents as required by statute and ensure that [it was] complying with the law as far as formalities were concerned.  Eden also resolved issues with third parties involving Square One [e.g., an entity's allegation that Square One breached a lease agreement]. . . .

"7. As the attorney for [Enterprise], Eden also advised Square One as the general partner of the three limited partnerships that are the parties to the property management agreements with [Development].

"8. Eden also represented the Cafagna Family Trust and other entities that are [owned] by the Cafagna family. . . .  Eden prepared trust documents for our family trusts. . . .

"9. Kyle Yaege represented the Cafagna family in potential litigation matters where we were individually named as possible defendants.

"10. Eden and Kyle had complete access to and routinely reviewed confidential information for Kevin, the Cafagna-owned entities and me.  For example, until 2011, Eden maintained copies of the tax returns for all the [Enterprise] entities, including Square One, the personal tax returns for Michael and me, and tax returns for the Cafagna family trusts.  Eden also maintains copies of all Cafagna family trust documents and routinely updated a matrix that contained confidential information about each of the family trusts."

Sharon's declaration also described several e-mails and documents that showed Eden and

Kyle's past representation of Enterprise, Square One, Sharon, and the Cafagna family.

11

In opposing the motion to disqualify, Development argued the Yaeges' prior representation of Square One is not substantially related to Counsel's current representation of Development in the instant action. In support of its opposition, Development submitted the declarations of Kyle Yaege, Eden Yaege, Mark, and Louis Galuppo. Eden's declaration stated she assisted Mark with drafting leases and coordinating commercial loans and performed other tasks he asked her to do. Regarding those matters that involved the Cafagnas or their wholly owned entities, all of the information disclosed to her came from Mark outside their presence or were provided by them with Mark's active participation. She had about 10 meetings in person with Sharon over 10 years and slightly more meetings with Kevin, and most of those meetings were informal (e.g., holiday parties and staff meetings). Kyle's declaration described his representation of the Cafagnas and Square One regarding his negotiation of a tolling agreement in a dispute with a lender regarding another limited partnership that had defaulted on its loan.

The trial court denied Square One's motion to disqualify Counsel, concluding Square One had not shown that Counsel's former employment involved matters related to, or in conflict with, the present action. It found, in effect, that Square One had not carried its burden to show the legal problems or issues in Counsel's former representation of Square One are substantially related to the legal problem in the instant action.

12

B

We conclude the trial court did not abuse its discretion by finding Square One had

not carried its burden to show the legal problems or issues in Counsel's former

representation of Square One are substantially related to the legal problem or issue in the

instant action.  Under Square One's successive representation theory, it had the burden to

show a substantial relationship exists between the legal problems involved in Counsel's

former representation of Square One and the legal problem involved in the instant action.

(*Santa Teresa Citizen Action Group v. City of San Jose*, *supra*, 114 Cal.App.4th at p. 711;

*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, *supra*, 6 Cal.App.4th at p. 1056; *Flatt v.*

*Superior Court, supra,* 9 Cal.4th at p. 283.)  "To determine whether there is *a substantial*

*relationship between successive representations*, a court must first determine whether the

attorney had a direct professional relationship with the former client in which the attorney

personally provided legal advice and services *on a legal issue that is closely related to*

*the legal issue in the present representation*."  (*City and County of San Francisco v.*

*Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847, italics added.)  "The test for a

'substantial relationship' between cases entails an inquiry into ' "the similarities between

the two factual situations, the legal questions posed, and the nature and extent of the

attorney's involvement with the cases." '  [Citation.]  It must be shown that the

information from the prior representation is 'material' to the current employment.

[Citation.]  ' "As part of its review, the court should examine the time spent by the

attorney on the earlier cases, the type of work performed, and the attorney's possible

13

exposure to formulation of policy or strategy." ' "  (*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 234.)

Based on our review of the evidence submitted by the parties below, we conclude there is substantial evidence to support the trial court's finding that neither Eden Yaege nor Kyle Yaege formerly represented Square One in any matter involving a legal issue *closely related* to the legal issue in the instant action.  (*City and County of San Francisco v. Cobra Solutions, Inc.*, *supra*, 38 Cal.4th at p. 847.)  Applying the presumption of correctness and abuse of discretion standard of review, we defer to the trial court's findings of fact, including its determinations of the weight and credibility of evidence. (*Clark v. Superior Court*, *supra*, 196 Cal.App.4th at pp. 46-47.)  In so doing, we infer the trial court found the declarations of Kevin and Sharon Cafagna to be insufficiently specific regarding the exact nature of Counsel's former representation of Square One and inadequate to show the existence of any legal issue that is closely related to the legal issue in the instant action.  As Development asserted below and the trial court impliedly found, the legal issue in the instant action is whether or not Development is required to turn over to Square One business records of the three limited partnerships.  Square One's complaint in the instant action seeks injunctive relief requiring Development to turn over all business records of the three limited partnerships (GV, RVI, and TV) and a declaration that Development has no right to retain those business records and must turn them over to Square One, as the general partner of those limited partnerships.

14

The instant action does not involve any legal issue other than whether Development must turn over to Square One business records of the limited partnerships. However, none of the matters in which Eden and Kyle Yaege formerly represented Square One involved that legal issue or any other legal issue closely related to that issue. The fact Eden formerly represented Square One "on the law regarding limited partnerships and Square One's role as the general partner" of the limited partnerships, is, in effect, merely a general statement that she provided Square One with legal advice on its legal duties as a general partner of limited partnerships. That advice does *not* have a "close relationship" to Square One's action to require Development, as the purported former property manager of the limited partnerships, to turn over business records of those partnerships. Likewise, Eden's former representation of Square One in transactional matters and preparation of Cafagna family trust documents does not have a "close relationship" to the legal issue in the instant action. Similarly, Kyle's former representation of Square One or other Enterprise entities in potential litigation matters does not show those matters involved a legal issue closely related to the legal issue in the instant action (i.e., the turnover of business records of the limited partnerships). Regardless of the nature and extent of the personal contacts between the Cafagnas and the Yaeges, there is no evidence showing the Yaeges (or Galuppo) formerly represented Square One in any matters involving a legal issue closely related to the legal issue in the instant action. The trial court correctly found Square One had not carried its burden to show the successive representation rule applied to require Counsel's disqualification.

15

Alternatively stated, there is substantial evidence to support the court's finding that there is no substantial relationship between the legal problem or issue in the instant action and the legal problems or issues in matters in which Counsel formerly represented Square One.

IV

*Concurrent Representation*

Square One contends the trial court erred by impliedly finding Square One had not carried its burden to show Counsel concurrently represents Development and Square One in adverse matters. Square One asserts that Counsel currently represents it in the course of representing the three limited partnerships.

"[R]epresentation of a partnership does not, by itself, create an attorney-client relationship with the individual partners." (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1731; see also Rules Prof. Conduct, rule 3-600(A) ["In representing an organization, a member shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement."]; cf. *Kapelus v. State Bar* (1987) 44 Cal.3d 179, 191-192.) Therefore, Counsel's representation of the three limited partnerships (GV, RVI, and TV) does not, by itself, create an attorney-client relationship with Square One merely because of its status as the general partner of those partnerships. To the extent Square One relies on *Wortham & Van Liew v. Superior Court* (1987) 188 Cal.App.3d 927 to support a contrary position, we conclude, as other courts have, that it

16

is inapposite to an attorney disqualification case and does not persuade us that partnership attorneys necessarily also represent each of the individual partners for purposes of disqualification motions. (See, e.g., *Johnson v. Superior Court* (1995) 38 Cal.App.4th 463, 475-476, 477, fn. 4; *Responsible Citizens*, at pp. 1727-1728.)

However, an attorney-client relationship may nevertheless exist with an individual partner if certain factors show in a particular case that the partnership attorney has, in fact, also formed an attorney-client relationship with that partner. In *Johnson v. Superior Court*, *supra*, 38 Cal.App.4th at pages 476 to 477, we described the factors a court should consider in making such a determination: (1) the size of the partnership; (2) the nature and scope of the attorney's engagement; (3) the kind and extent of contacts between the attorneys and the individual partners; (4) the attorney's access to financial information relating to the individual partner's interests; and (5) whether the totality of the circumstances, including the parties' conduct, implies an agreement by the partnership attorney not to accept other representations adverse to the individual partner's personal interests. Primary attention should be given to the last factor. (*Id*. at p. 477; *Responsible Citizens v. Superior Court*, *supra*, 16 Cal.App.4th at p. 1733.)

Considering those factors in the circumstances of this case, we conclude the trial court did not err by impliedly concluding Counsel is not actually representing Square One in addition to representing the three limited partnerships and Development. The three limited partnerships have few partners. The nature and scope of Counsel's representation of the partnerships appear to be for routine partnership matters, in contrast

17

to matters relating to the individual interests of particular partners. There is substantial evidence to support the trial court's implied finding that Counsel has not been, and is not, performing services specifically for Square One's interests in contrast to the interests of the partnership generally. The kind and extent of contacts between Counsel and the individual partners, including Square One, do not show any representation other than that normally expected between a partnership's attorney and its partners regarding partnership matters. Likewise, although Counsel apparently has had access to certain financial information of Square One and/or the Cafagnas, Square One has not shown that financial information is other than that normally obtained by a partnership's attorney in the course of representing the partnership. In any event, Square One does not show Counsel *currently* has access to its financial information.

Finally, regarding the most important factor, the totality of the circumstances does *not* support an implied agreement by Counsel that it will not accept representations adverse to Square One's individual interests. On the contrary, the weight of the evidence appears to support the trial court's implied finding that Counsel did not agree to limit its representation of other partners or other clients to those without interests adverse to Square One. We are not persuaded by Square One's conclusory assertions to the contrary. The trial court did not err by impliedly finding Counsel did not concurrently represent Square One, the three limited partnerships and Development. The court did not abuse its discretion by denying Square One's motion to disqualify Counsel.

18

V

*Remaining Contentions*

Because we uphold the trial court's order denying the disqualification motion on the above grounds, we need not, and do not, address the merits of Square One's remaining contentions (i.e., that insufficient evidence supports the court's findings that Square One impliedly waived its right to file a disqualification motion and Development would be prejudiced were the court to grant the motion).

DISPOSITION

The petition is denied.  The real party in interest shall recover its costs in the writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)  This opinion shall be final as to this court on May 27, 2014.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)


McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


IRION, J.

19